```
 1              IN THE UNITED STATES DISTRICT COURT
                  WESTERN DISTRICT OF VIRGINIA
 2                     HARRISONBURG DIVISION


 3
       ******************************************************************
 4     UNITED STATES OF AMERICA,          CASE NO.: 5:21-MJ-00004
                                          January 19, 2021
 5                                        Rule 5 - Initial Appearance
                 Plaintiff,               Zoom Videoconference
 6        vs.

 7     THOMAS EDWARD CALDWELL,            Before:
                                          HONORABLE JOEL C. HOPPE
 8                                        UNITED STATES MAGISTRATE JUDGE
                 Defendant.               WESTERN DISTRICT OF VIRGINIA

 9
       ******************************************************************
10
       APPEARANCES:
11
       For the Plaintiff:
12
            CHRISTOPHER ROBERT KAVANAUGH
13          United States Attorneys Office - Charlottesville
            Western District of Virginia
14          255 West Main Street, Room 130
            Charlottesville, VA 22902
15          434-293-3981
            christopher.kavanaugh@usdoj.gov
16

17     For the Defendant:

18          LISA M. LORISH
            Federal Public Defenders Office
19          Western District of Virginia - Charlottesville
            401 E Market Street, Suite 106
20          Charlottesville, VA 22902
            434-220-3388
21          lisa_lorish@fd.org

22
       _____
23                   Mary J. Butenschoen, Transcriber

24
       PROCEEDINGS TAKEN BY ELECTRONIC RECORDING; TRANSCRIBED USING
25     COMPUTER-AIDED TRANSCRIPTION.
```

```
1    (Proceedings commenced 3:41. p.m.)

2              THE COURT:  Good afternoon.  Ms. Dotson, would you

3    please call the case.

4              THE CLERK:  Yes, Your Honor.  This is Criminal Action

5    Number 5:21-MJ-4.  United States of America v. Thomas Edward

6    Caldwell.

7              THE COURT:  Mr. Kavanaugh, is the government ready to

8    proceed?

9              MR. KAVANAUGH:  Yes, we are, Your Honor.  Good

10   afternoon.

11             THE COURT:  Good afternoon.  And Ms. Lorish, is the

12   defendant ready to proceed?

13             MS. LORISH:  He is, Your Honor.  Thank you.

14             THE COURT:  We're here for your initial appearance

15   and then also an identity and removal hearing, and that's

16   because you've been arrested on an arrest warrant on amended

17   complaint out of the United States District Court in the

18   District of Columbia.  So there are several things I need to go

19   over with you, and I'll advise you of some rights and the

20   nature of the charge against you, and then explain your right

21   to an identity hearing and production of the warrant.

22             I will need to ask you some questions, and your

23   answers do have to be under oath, so would you please raise

24   your right hand.

25                  THOMAS EDWARD CALDWELL, SWORN
```

1        THE DEFENDANT:  I do.

2        THE COURT:  Okay.  You may put your hand down.

3        Now, the first question is:  Can you read, write, and

4   understand English?

5        THE DEFENDANT:  Yes, Your Honor.

6        THE COURT:  All right.  Now, let me advise you of

7   several rights.  You do have the right to be represented by an

8   attorney in this case.  You can hire an attorney of your

9   choosing, or, if you can't afford to hire an attorney, then I

10  will appoint an attorney to represent you and that will be at

11  no cost to you.  Now, you can consult with your attorney at

12  every stage of this case both in and out of court.  And I would

13  appoint an attorney to represent you in this removal hearing.

14  And if you are to go to the District of Columbia to answer the

15  charge, or the charges against you, you would have a different

16  attorney appointed to represent you in that case.

17        But do you understand your right to be represented by

18  an attorney?

19        THE DEFENDANT:  Yes, I do, Your Honor.

20        THE COURT:  All right.  And would you like the Court

21  to consider -- consider appointing an attorney to represent

22  you?

23        THE DEFENDANT:  I was talking to counsel a moment

24  ago, and I don't know -- I don't know whether her interaction

25  with me, you know, foregoes that.

1      THE COURT:  Well, so I would appoint Ms. Lorish, who

2  you spoke to --

3      THE DEFENDANT:  Oh, okay.

4      THE COURT:  -- Federal Public Defender.  I would

5  appoint her --

6      THE DEFENDANT:  Yes, sir.

7      THE COURT:  -- to represent you if you want.

8      THE DEFENDANT:  Yes, Your Honor.  Thank you so much.

9  This is all new to me.  I'm sorry, I didn't quite understand.

10      THE COURT:  That's okay.  And let me just ask you

11  some questions about your financial circumstances to see if you

12  would qualify for appointment of counsel, okay?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  Are you currently working?

15      THE DEFENDANT:  No, sir.  I'm on disability, sir.

16      THE COURT:  Okay.  And about how much -- about how

17  much do you earn through that and any other source per month?

18      THE DEFENDANT:  About -- I think about $5,000.

19      THE COURT:  Okay.  And is that through disability and

20  other -- and other payments?

21      THE DEFENDANT:  Yes, sir.  I have my retirement from

22  the United States Navy, sir.

23      THE COURT:  Okay.  And do you have any money in a

24  bank account?

25      THE DEFENDANT:  I do, Your Honor.  Most of the moneys

1  that are available to my wife and I are tied up in trust, so

2  they are in trust accounts.  We do have some checking account

3  money.

4          THE COURT:  All right.  About how much unencumbered

5  money do you have in liquid cash?

6          THE DEFENDANT:  Your Honor, I'm not trying to be

7  evasive.  I actually don't know because my wife handles the

8  money.  I -- I recently lost my father, and we settled the

9  estate, so I'm saying we've got at least $50,000 in the

10 checking account right now.

11         THE COURT:  Okay.  All right.  And do you own any

12 other significant property, such as a residence or a vehicle?

13         THE DEFENDANT:  We do, Your Honor.  We -- we own part

14 of the farm that I grew up on.  That is also in trust.

15         THE COURT:  Okay.  All right.  And do you --

16         THE DEFENDANT:  I have a vehicle.  It's about a 2008

17 Highlander.  And I had a collector automobile which was damaged

18 by the FBI today, so I don't know how much it's really worth.

19         THE COURT:  All right.  And do you have any

20 significant debts?

21         THE DEFENDANT:  No, sir.  No, sir.

22         THE COURT:  All right.  Well, I tell you, I don't --

23 Mr. Caldwell, I don't think that you would qualify for

24 appointment for counsel because it sounds like you have

25 sufficient assets to be able to hire a lawyer to represent you.

1   Ms. Lorish is here, and as a member of the Federal Public

2   Defenders office I know that -- I imagine she would want to be

3   here to make sure that your rights are protected during this

4   hearing, and I'm certainly going to make sure they are

5   protected as well.

6          What I would do is appoint Ms. Lorish in,

7   essentially, an advisory capacity for this hearing, and but I

8   think you would have to -- you would have to hire a lawyer in

9   the District of Columbia if you're to go there to answer the

10  charges against you.

11         All right.  Ms. Lorish --

12         THE DEFENDANT:  All right, Your Honor.

13         THE COURT:  Ms. Lorish, do you agree to proceed that

14  way?

15         MS. LORISH:  I'm happy to provide advice to

16  Mr. Caldwell today, yes, Your Honor.

17         THE COURT:  Okay.  All right.  And Mr. Caldwell,

18  alternatively, you could hire a lawyer for that hearing if you

19  wanted to, but if you are comfortable proceeding with

20  Ms. Lorish in an advisory capacity we can go ahead.

21         THE DEFENDANT:  I'm very comfortable, Your Honor.

22  Thank you.

23         THE COURT:  Okay.  Now, you also have a

24  constitutional right to remain silent, which means that you

25  cannot be required to make any statements about your case.

1    Now, if you already have made any statements to law enforcement

2    or a police officer, you don't have to make any more.  If at

3    some point in the future you want to agree to questioning by

4    law enforcement, you can have your attorney present during that

5    questioning and consult with her, and you can stop that

6    questioning at any time.

7         Now, you should talk with your lawyer about your

8    case, but if you talk to anybody else about your case your

9    statements could be used against you to prosecute you.

10        Now, do you understand your right to remain silent?

11        THE DEFENDANT:  I do, Your Honor.

12        THE COURT:  Now, you also have a right to consular

13   notification.  And I don't know whether this has any

14   application to you, but I need to advise you of it anyway.  And

15   this right is for a defendant who is not a United States

16   citizen.  You can ask the United States Attorney to notify the

17   consulate of his nationality when he's been arrested.

18        Do you understand that?

19        THE DEFENDANT:  Yes.  Yes, Your Honor, I do.

20        THE COURT:  All right.  Now, Mr. Kavanaugh, you need

21   to advise the government -- and I know you're aware of this,

22   but the government is required to adhere to its disclosure

23   obligations in *Brady v. Maryland* and its progeny to provide any

24   evidence that is favorable to the accused.

25        MR. KAVANAUGH:  Yes, Your Honor.  Thank you.

1    THE COURT:  All right.  Now, in just a moment I'm

2    going to go over the complaint, the amended complaint, and the

3    charges against you.  I do want to advise you that you do have

4    the right to have this hearing, this identity and removal

5    hearing and your initial appearance, all in person at the

6    courthouse, which means we would all just assemble in a room in

7    the courthouse and have this exact same hearing that we're

8    having right now.  But you can also agree to waive that right

9    to an in-person hearing and proceed by video if you want to.

10   But do you understand that you have that right to an

11   in-person hearing?

12   THE DEFENDANT:  Yes, sir.  Yes, sir, I do.

13   THE COURT:  All right.  And do you want to waive that

14   right to an in-person hearing and proceed by video today?

15   THE DEFENDANT:  I believe that on advice of my

16   counsel that we would like to go ahead and waive that and

17   proceed.

18   THE COURT:  All right.  Well, then I will accept that

19   waiver, and we will proceed today by video.

20   THE DEFENDANT:  Yes, Your Honor.

21   THE COURT:  Now, have you received a copy of the

22   amended complaint in this case?

23   THE DEFENDANT:  Just handed to me moments ago, Your

24   Honor.

25   THE COURT:  Did you have any time to go over it with

1    Ms. Lorish before the hearing?

2            THE DEFENDANT:  She did -- before I got the copy

3    before me, Your Honor, she did give me the highlights or

4    lowlights, if you will.  So I am aware of the charges but I'm

5    not totally --

6            THE COURT:  Hold on.  And so what I'm going to -- I'm

7    just going to go over those with you, and I'll kind of give you

8    the gist of it.  Then I'm just going to ask you if you

9    understand what the amended complaint alleges, or what it says

10   you did.  But I'm not going to ask you whether you agree or

11   disagree with anything that it says, and I would advise you not

12   to make any statements about it, okay?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  So the amended complaint charges you with

15   six federal offenses.  I'll go over those offenses in a moment,

16   but I thought what I would do is just give you the gist of the

17   affidavit first.  And it sounds like Ms. Lorish may have done

18   this as well.

19           But what the affidavit alleges is that you were a

20   member of a paramilitary organization called the Oath Keepers

21   and that there are several other people who are also charged in

22   the amended complaint who are a member of that group as well,

23   and it's Mr. Crowl and Ms. Watkins.  And that in December and

24   January there was communications, primarily through Facebook

25   and other meetings like that, about an Oath Keepers gathering

1    in -- one in Virginia and then going into Washington, D.C. on

2    January 6 with a plan to storm the U.S. Capitol and disrupt the

3    House of Representatives and the Senate while they were

4    conducting their business to certify Joe Biden as President of

5    the United States.

6            And then the complaint goes on to discuss events that

7    happened on January 6 in or around the Capitol.  And it alleges

8    that you and other members of the Oath Keepers and many other

9    people forced entry into the United States Capitol and that

10   property was damaged and law enforcement officers were

11   assaulted and members of the House of Representatives and

12   Senate, and also Vice President, were forced to leave the joint

13   sessions for their safety and move into secured locations to,

14   essentially, get out of the way of you and other folks who had

15   forced their way into the Capitol.

16           Now, that's sort of the gist of the allegations.  And

17   from those allegations there are several charges that the

18   complaint levels against you.  And two of those charges are

19   conspiracy type charges.  A conspiracy is, essentially, an

20   agreement between two or more people to do something illegal,

21   and then there has to be step or steps taken in furtherance of

22   those conspiracies.

23           So the first charge is a general conspiracy under

24   Section 371.

25           Now, the second one is a conspiracy to impede someone

1  who is involved in a -- make sure I follow this exactly right.

2  Essentially, a conspiracy to prevent by force or intimidation

3  or threat someone who is engaged in discharging the duties of

4  his or her office.

5          Now, the next charge is destruction of government

6  property, and I think it's alleged in the affidavit that the

7  destruction of property was over a value of a thousand dollars.

8          Fourth charge is the obstruction of an official

9  proceeding.  What that alleges in a little bit more detail is

10  that someone tries to corrupt the -- obstruct or influence or

11  impede any official proceeding.  That sort of conduct is

12  prohibited.

13          And then there's a charge of entering a restricted

14  building or grounds, and the affidavit provides that the

15  Capitol and the area around it were restricted grounds at that

16  time.

17          And then finally, there's a charge for violent entry

18  and disorderly conduct on the Capitol grounds.

19          Mr. Caldwell, do you understand kind of the gist of

20  the charges against you?

21          THE DEFENDANT:  I certainly do, Your Honor.

22          THE COURT:  All right.  And Mr. Kavanaugh, what are

23  the penalty ranges for those charges?

24          THE DEFENDANT:  I'm sorry, you broke up there, Your

25  Honor.  One more time there, please, sir.

1          THE COURT:  And this is a question for the Assistant

2    United States Attorney.  He's going to announce the penalty

3    ranges for the charges.

4          MR. KAVANAUGH:  Your Honor, I'm only going to go

5    one-by-one through these.  The first is the conspiracy in

6    violation of 18 U.S.C. Section 371.  That's a conspiracy to

7    obstruct justice.  The penalty for that is a term of

8    imprisonment of up to five years, a fine of $250,000, up to

9    three years of supervised release, and a $100 special

10   assessment.

11         As to Count Two, a conspiracy to impede or injure an

12   officer without lawful authority in violation of 18 U.S.C. 372,

13   that is punishable by a term of imprisonment of up to six

14   years, punishable by a fine of up to $250,000, three years of

15   supervised release, and a $100 special assessment.

16         For a violation of 18 U.S.C. 1361, destruction of

17   government property and greater than $1,000, that is punishable

18   up to a term of ten years to prison, a $250,000 fine, three

19   years of supervised release, and a $100 special assessment.

20         As to Count Four, the obstruction of an official

21   proceeding in violation of 18 U.S.C. Section 1512(c)(2), that

22   is punishable for a term of imprisonment of up to 20 years, a

23   fine of $250,000, a term of supervised release of up to three

24   years, and a $100 special assessment.

25         Count Five is a misdemeanor, a Class A misdemeanor,

1    in violation of 18 U.S.C. 1752(a), restricted -- entering a

2    restricted building or grounds.  That is punishable up to one

3    year in prison, a $100,000 fine, one year of supervised

4    release, and a $25 special assessment.

5          And last, Count Six, a violation of Title 40, United

6    States Code, Section 5104(e)(2).  This is a petty offense

7    misdemeanor, a Class B misdemeanor, for violent entry and

8    disorderly conduct on the Capitol grounds, punishable up to a

9    term of imprisonment of six months, a fine of $5,000, up to

10   $5,000, supervised release is not available, and a special

11   assessment of $10.

12         THE COURT:  Do you understand that those are the

13   statutory maximum penalties that are associated with the

14   offenses?

15         THE DEFENDANT:  I sure do, Your Honor.

16         THE COURT:  All right.  Now, you have several options

17   for how to handle your case at this point, and that's because

18   you've been arrested in the Western District of Virginia on

19   charges out of the District of Columbia.  You can require the

20   government to prove that you're the person named in the

21   complaint and the arrest warrant, that you are Thomas Edward

22   Caldwell, and you can require the government to produce the

23   warrant.

24         Alternatively, you can agree that you're the person

25   named in the warrant and the complaint, and then you would need

1    to go to the District of Columbia to answer these charges.

2         Do you understand that you do have that right to

3    identity hearing and production of the warrant?

4         THE DEFENDANT:  Yes, sir.  Yes, sir.  And, Your

5    Honor, I am the person named, and I look forward to my

6    opportunity in D.C. to prove that every single charge is

7    false.

8         THE COURT:  Okay.  All right.  Well, so in that case,

9    you will go to the District of Columbia to answer these

10    charges.

11         I do need to advise you of a couple of additional

12    things, and one is that under Rule 20 of the Federal Rules of

13    Criminal Procedure you do have the option of keeping the

14    charges here in this district, but there would be a couple of

15    things that would have to happen first.  The United States

16    Attorneys in both districts would have to agree to the transfer

17    of the charges to this district, and you would have to agree to

18    plead guilty to the charges, and I'm just -- I just have to

19    advise you of that rule.

20         Do you understand that rule?

21         THE DEFENDANT:  I do understand that rule, Your

22    Honor.

23         THE COURT:  Okay.  And then additionally, you do have

24    the right to have a preliminary hearing and a detention

25    hearing.  Now, at a preliminary hearing the government would

1  have to present evidence to show that there is probable cause

2  for the charges to go forward.  You could see and hear the

3  witnesses against you and have them cross-examined by your

4  attorney, and your attorney could also present evidence on your

5  behalf.

6          Mr. Caldwell, do you understand that you do have that

7  right to a preliminary hearing?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  All right.  And now you can have that

10  here or you can have that at the District of Columbia.

11          MS. LORISH:  Your Honor, I believe Mr. Caldwell

12  intends to have that hearing when he gets to the District of

13  Columbia.

14          Is that correct, Mr. Caldwell?

15          THE DEFENDANT:  That's correct, Counselor.

16          THE COURT:  All right.  And then the other thing that

17  we need to address is whether you're going to be released or

18  detained in this -- in this case.

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  And we can have that hearing in this

21  district or you can reserve your right and have that in the

22  District of Columbia.

23          MS. LORISH:  Your Honor, I believe Mr. Caldwell

24  intends to seek release today from this district, and I'm happy

25  to present arguments on his behalf based on the conversation I

1    had with him beforehand.  Although I think it is the

2    government's burden in this case, so perhaps it would be

3    appropriate for them to go first.

4              THE COURT:  All right.  Mr. Kavanaugh, what is the

5    government's position?

6              MR. KAVANAUGH:  Your Honor, we are seeking that the

7    defendant be detained pursuant to 3142(f)(1)(A).  That 18

8    U.S.C. 1361, the destruction of government property, is a crime

9    of violence for purposes of the Bail Reform Act.

10             THE COURT:  All right.  And Mr. Kavanaugh, do you

11   want to have the hearing today?  Are you ready to go forward?

12             MR. KAVANAUGH:  We are prepared to proceed by proffer

13   today, Your Honor, that's correct.

14             MS. LORISH:  Can I just clarify what statute the

15   government was alleging is a crime of violence?  Was that

16   40 U.S.C. 5104?

17             MR. KAVANAUGH:  No, 18 U.S.C. 1361.

18             MS. LORISH:  Okay, thank you.

19             THE COURT:  And Mr. Kavanaugh, is there any other

20   grounds for --

21             MR. KAVANAUGH:  Your Honor, there would be a fallback

22   grounds under these circumstances, and that would be under

23   18 U.S.C. 3142(f)(2)(B), that in the event of the defendant's

24   release there is a concern that he would obstruct justice.  And

25   I can provide some of the additional information in support of

1    that, but that is, generally speaking, the evidence that the

2    government has that Mr. Caldwell has deleted or destroyed some

3    of the evidence that is part of this case.  I believe that may

4    have been recovered by the federal government, but, in

5    particular, Facebook messages, that the defendant had made

6    relating to the Capitol riots.

7            THE COURT:  Okay.  Ms. Lorish, is there any objection

8    that the government proceed by proffer?

9            MS. LORISH:  There's no objection to the proceeding

10   by proffer.  Thank you, Your Honor.

11           THE COURT:  All right.  And Mr. Caldwell, what that

12   means is that the prosecutor would proffer or just present what

13   he believes the evidence would be related to the detention

14   hearing rather than call an agent to testify as to that

15   evidence.  For a detention hearing, proffers are permissible.

16           MS. LORISH:  Your Honor, if I may, just for

17   Mr. Caldwell's benefit, if you were to delay and ask for the

18   agent to be present instead of proceeding by proffer, you would

19   be sitting in custody until early next week realistically until

20   the agent could be ready, or at least the end of this week.

21           THE COURT:  The government would -- would be -- and

22   really either side would be entitled to a continuance of a

23   detention hearing if requested.

24           All right.  Mr. Kavanaugh?

25           MR. KAVANAUGH:  Yes, Your Honor.  I'm going to be

1    proceeding largely on the affidavit, as well as I may be able

2    to supplement some of what the government has learned pursuant

3    to the search warrant that was this morning.  Particularly, I'm

4    going to go through the factors of 18 U.S.C. 3142(g), and I'll

5    start with the nature and circumstances of the offense charged.

6            As an initial matter, one of the offenses charged,

7    the one of the destruction of government property, is a crime

8    of violence.  But more importantly, the nature of the offense,

9    obviously, is very much directed at the fabric of our

10   democracy, the attempt of insurrection and to overthrow what

11   was occurring and to stop what was occurring on January 6 of

12   2020 -- or '21.

13           These events threatened the safety of the members,

14   the staff, the police.  Five people died, including one Capitol

15   police officer, Your Honor.

16           THE COURT:  Is it the destruction of government

17   property or is it the destruction of an official proceeding

18   that the government contends is a crime of violence?

19           MR. KAVANAUGH:  Your Honor, it's the destruction of

20   government property.  As the Count Two, the conspiracy, we're

21   not moving forward on the basis of that is a crime of violence.

22           THE COURT:  I'm looking at Count Four, which -- let's

23   see, okay.

24           All right.  So destruction of government property.

25   That just concerns property, though, right?

1    MR. KAVANAUGH:  Yes, Your Honor.  And under the

2    definition of 3156, where the crime of violence definition is,

3    that it can require force against a person or property of

4    another.  So property is in fact included.  It doesn't

5    necessarily have to be a person for purposes of the Bail Reform

6    Act.

7          THE COURT:  Okay.  (Inaudible).

8          MR. KAVANAUGH:  And I'm sorry, Your Honor, I think I

9    may have been talking over you briefly there.  I didn't hear

10   you due to the Zoom.  So I apologize about that.

11         Your Honor, these -- the government's point of view

12   is that these are very much the hallmarks of serious federal

13   crimes.  There indicated that there was planning that was

14   involved, that there was interstate travel, and many of the

15   individuals were wearing military uniforms, and that it's -- it

16   is very much likely that additional charges are going to be on

17   the table in these cases, such as the Federal Riot Act's

18   edition and others.

19         The weight of the evidence here is very much strong.

20   The defendant admitted in Facebook messages to storming the

21   Capitol multiple times, and at one point in time stated that he

22   was inside the Capitol.  Or "inside," specifically.

23         He was captured on video outside of the Capitol

24   shouting insults to members of Congress and calling them

25   traitors saying that every single person inside the building

was a traitor.  And this is just before they stormed the

Capitol.

There is cell site analysis that places his wife, who

was with him, in the vicinity of the Capitol during the time of

the attack, and Mr. Caldwell made numerous Facebook messages

about the planning for the events in advance of January 6 of

2021.

Third and finally -- or third is the history and

characteristics of the individual, Mr. Caldwell.  And the

government admits that he does have minimal criminal history

and that appears that -- all I am aware of is that it appears

to be several traffic matters that are in fugitive status, but

that is the only evidence that I have regarding his criminal

history.  But regarding his characteristics is that it is --

the government alleges that he maintains a leadership position

with the Oath Keepers, which, as the Court noted in the

affidavit, is a paramilitary organization with antigovernment

ideology that advises its members not to follow government laws

and rules that it disagrees with or what it considers to be

unconstitutional.

Fourth is the nature and seriousness of the danger to

any person of the community posed by the defendant's release.

And here, I'm focusing mostly on the defendant's danger to the

community in light of his Facebook messages.  Mr. Caldwell

exhibited no remorse or contrition for his conduct and

1    considers himself and fellow co-conspirators to very much be

2    patriots for storming the Capitol and attempting to harm

3    elected members of Congress that were inside and stopping the

4    election certification.

5            He supported storming Capitols at the local level in

6    states, and by his own statements admitted to being such an

7    instigator and was willing to participate in those as well.

8            These same messages reflect his willingness to engage

9    in political violence, or as he referred to was hunting at

10   night.  Specifically, on January 1, the defendant sent a

11   Facebook message to one of his co-defendants recommending a

12   room at the Comfort Inn in Boston for January 5 through January

13   7 and wrote:  "This is a good location and would allow us to

14   hunt at night if we wanted to."

15           These -- and also there is evidence that Watkins and

16   Crowl, his co-defendants, were with him this weekend before

17   they turned themselves in.

18           During the -- some of the subsequent -- the search

19   warrant that occurred today, the government located about four

20   or five new weapons that were located at his -- at his

21   residence, and as well as evidence in his Facebook that he and

22   his fellow co-conspirators were attempting to use encrypted

23   messages and means to communicate with one another and deleting

24   those messages in Facebook.

25           For all of these reasons, on these factors under

1    3142, the government respectfully requests that the -- by clear

2    and convincing evidence that there are no conditions or

3    combinations of conditions of release that could ensure the

4    safety of the community and that the defendant would return to

5    court as required.

6            There were a couple of other Facebook messages that I

7    wanted to draw the Court to that were included in the

8    affidavit.  Specifically, on January 6 the defendant said, "We

9    need to do this at the local level.  Let's storm the Capitol in

10   Ohio.  Tell me when."

11           He posted a video with -- quoted that said this was

12   before the assault, "Before the assault."  And that was when he

13   was on video stating that, "Every single" -- expletive -- "in

14   there is a traitor.  Every single one."

15           He said in advance on December 31 of 2020, he replied

16   in a Facebook comment that, "It begins for real on January 5

17   and 6 in Washington, D.C. when we mobilize in the streets.  Let

18   them try to certify some crud on Capitol Hill with a million or

19   more patriots in the streets.  This kettle is set to boil."

20           And then last and finally that I wanted to bring to

21   the Court's attention, is that on January 6 he received a

22   message that all members are in the tunnels -- all the members

23   of Congress are in the tunnels under Capitol, and he was told

24   to seal them in, and he had posted a Facebook message that

25   replied "Inside," indicating that he was inside the Capitol

1    Hill, inside the Capitol.  And other members were encouraging

2    him and others to take it over and that the legislators were

3    three floors down in the tunnels.

4            So that is some of the evidence that would be

5    expected at trial that we submit goes to the strength and the

6    nature of the -- the nature and circumstances of the offense

7    that's charged here.

8            So for all of these reasons, Your Honor, in light of

9    the factors of 3142, we ask that the defendant be detained.

10           And I provided this to counsel as well.  In the event

11   that the Court disagrees and finds that the government has not

12   met its burden, then we would respectfully request that the

13   Court stay any release order to allow U.S. Attorneys Office in

14   D.C. to file an appeal.  They have asked for me to ask the

15   Court for that as well.

16           That's all I have, Your Honor.

17           THE COURT:  Ms. Lorish, what does Mr. Caldwell have

18   to say?

19           MS. LORISH:  Thank you, Your Honor.

20           Well, first, I would just note for the Court that, of

21   course, the government's intent to file a motion to stay in the

22   event this Court would grant release is not a relevant

23   consideration under the Bail Reform Act.

24           THE COURT:  No, I don't think --

25           MS. LORISH:  -- evaluate the criteria before it and I

1    think that the criteria support release.

2            As an initial matter, we disagree with the government

3    that 18 U.S.C. 1361 is a crime of violence making this a

4    presumption offense.  To be a crime of violence there has to be

5    an element of the physical -- that requires the physical use of

6    force against person or property.  There's simply no element

7    that requires the physical use of force in this statute.

8    Willful injury could occur in any number of mechanisms, and we

9    would disagree that the element requires physical use of force,

10   and, therefore, it would not be a crime of violence and

11   disagree that it's a presumption offense.

12           Even if it were a presumption offense, the Court

13   should start by considering the nature and circumstances of the

14   offender that, you know, Mr. Kavanaugh glossed over today.

15   Mr. Caldwell has no record of criminal history.  Therefore, any

16   guns he possessed, there's been no allegation he possesses them

17   unlawfully.  At least that was referenced here today.  He

18   doesn't have any felonies.  He just has the traffic offenses

19   that Mr. Kavanaugh suggested he has.

20           In addition, he's a veteran.  He's a United States

21   Navy veteran who was discharged honorably.  He is not just a

22   veteran that was honorably discharged.  He was injured during

23   combat in his service to our country.  On that note, he has

24   extensive injuries, including spinal injuries.  He currently

25   has medical prescriptions to take medicine related to those

1   injuries four times a day due to his damaged spinal cord.  He

2   was not allowed by the arresting agents to bring those

3   medications with him to the jail.  He also has to use a CPAP

4   machine to allow him to be able to breathe at night.  Of

5   course, this Court is well familiar with sleep apnea.  Without

6   that CPAP machine, he is at risk of not being able to breathe

7   while he sleeps, and he was also not allowed to bring the CPAP

8   machine with him when he was arrested today.

9          As this Court may know, there are currently at least

10   50 confirmed cases of COVID-19 at the jail where Mr. Caldwell

11   is being held.  The United States Marshals have informed

12   counsel, you know, in our office about all -- numerous federal

13   inmates who are currently being held at Central Virginia

14   Regional Jail who have COVID.  Mr. Caldwell, being 66 years

15   old, qualifying as obese given his body mass index, and with

16   sleep apnea is at significant risk of catching COVID-19 because

17   he's at a jail where there is an outbreak.  And, also, he's at

18   significant risk of having a serious case and not having the

19   medical attention that he would feed while he's incarcerated.

20   So that's all relevant to the nature and circumstances of the

21   offender.

22          With respect to the seriousness of the offense, of

23   course the allegations the government suggests are quite

24   serious.  At this point they are allegations, and I would note

25   for the Court that they do not suggest that Mr. Caldwell

1  himself committed any acts of violence.  They do not -- they

2  almost entirely are based on statements that were made,

3  statements that are not alleged to have been criminal.  None of

4  the Facebook messages have been alleged as inciting any kind of

5  violence, or the government hasn't charged him with unlawful

6  speech.  And in fact, the allegations that have been alleged

7  are all currently lawful speech that was used.  I believe

8  according to NPR this morning, 70 percent of Republicans

9  believe that the election was fraudulent, so Mr. Caldwell is

10  certainly not alone in expressing his views concerning the

11  election in this case.

12          So I think given that backdrop, the fact that there

13  hasn't been any allegation that he himself participated in

14  violence, and given the nature of the evidence which is

15  largely -- could be considered blustering on Facebook, that the

16  Court should weigh the factors in favor of the release given

17  the potential seriousness of having Mr. Caldwell incarcerated

18  right now given the outbreak at the jail.

19          Thank you, Your Honor.

20          THE COURT:  Mr. Kavanaugh, anything else?

21          Mr. Kavanaugh, anything else?

22          MR. KAVANAUGH:  Yes, Your Honor, I apologize.

23          Two things, Your Honor, is that number one, in the

24  case of *United States v. Khatallah*, which is 316 F.Supp 3d 207

25  at page 213, and that's a D.C. district case from 2018, the

1    Court there found that 1363, which is another destruction of

2    property crime that is very similar to 1361, satisfies the

3    elements clause under 924(c), and that we think the conclusion

4    should be the same the to 1361, as it very much tracks the same

5    language.  The only difference is, is that it includes the --

6    by depredation, which the definition of which is to attack or

7    plunder, which also to the government's view indicates force.

8    But second is that even if it doesn't qualify as a crime of

9    violence under the elements clause, any offense could be --

10             (Background noise)

11             I apologize.  I apologize.

12             Under the Bail Reform Act, specifically, the residual

13   clause under the Bail Reform Act, 3156(a)(4)(B) which involves

14   any other offense that by its nature involves a substantial

15   risk of -- that physical force against a person or property of

16   another may be used, that is still viable, still viable,

17   notwithstanding that in the Supreme Court that the *Davis* court

18   found that the residual clause in 924(c) was unconstitutional.

19             In support of that still being viable, because it's

20   in a pretrial context, the government can point to a case

21   called *Watkins* out of the Second Circuit, which was after *Davis*

22   and said that it's still viable.  And the cite for that is

23   *United States v. Watkins*, 924 F.d 152.  So just to respond to

24   the argument that it does not constitute a crime of violence,

25   we think it absolutely does.

1      MS. LORISH:  Your Honor, if I may briefly respond on

2  behalf of Mr. Caldwell.

3      THE COURT:  Sure.

4      MS. LORISH:  I just would of course note that

5  Mr. Kavanaugh is only citing out of district and out of circuit

6  precedent for his assertion.  And it's a serious conclusion

7  whether or not Mr. Caldwell is subject to presumption offenses

8  or not.  And I think the weight of the authority here, and as

9  the Court has noted, the statute that they are relying upon for

10  a crime of violence really has to do with a property offense,

11  which is pretty inconsistent with the notion of a crime of

12  violence across the case law.

13      And then the residual clause, while it has not yet

14  been struck down out of this particular statute, the Fourth

15  Circuit has certainly struck it out of every other similar

16  statute, and there's no reason to think that the same

17  conclusion wouldn't bear here.

18      So thank you, Your Honor.

19      MR. KAVANAUGH:  And Your Honor, I apologize.  I don't

20  mean to quibble with Ms. Lorish, but there absolutely is reason

21  to think that there would be a different conclusion reached

22  here, precisely because it doesn't address a prior conviction.

23  It's in a completely different context, and that's exactly what

24  the Second Circuit said in *Watkins*, which is why we think the

25  residual clause is still viable.  But still that we think that

1    this qualifies under the elements clause.

2              THE COURT:  Well, what I'm going to decide is first

3    whether the charged offenses warrant holding a detention

4    hearing under 3142(f)(1).  Alternatively, under (f)(2) on the

5    motion of the government or upon Court's own motion there can

6    be a detention hearing where the defendant presents a serious

7    risk of flight; or a serious risk the person will obstruct or

8    attempt to obstruct justice.

9              I do have some questions about whether any of the

10   cited offenses are crimes of violence.  And the one that the

11   government has highlighted, the destruction of property

12   (indiscernible) have some questions about that.  But I think

13   that there is a basis for holding a detention hearing, and

14   that's on the (f)(2)(B), the serious risk a person would

15   obstruct or attempt to obstruct justice.  And where I come down

16   here is just the government's proffer and the information in

17   the affidavit.  Ms. Lorish certainly expressing views about how

18   the election was conducted is -- you know, that's not a

19   criminal offense.  The affidavit details quite a lot of

20   activity to recruit people and travel to -- organize and travel

21   to the District of Columbia to thwart the certification of the

22   lawfully elected President of the United States.  And it

23   really -- you know, the conduct and the statements of

24   Mr. Caldwell and the others, it really just is pure lawlessness

25   and contempt for laws of this country.  And counts of a very

1   serious matter.  Going into the Capitol, you know, hundreds,

2   probably more than that, people storming the Capitol forcing

3   the Vice President and every legislator in our country, every

4   federal legislator of our country, to flee for their safety.

5   It is a crime of the utmost serious because it threatens our

6   very -- very foundations of our country.  And I think it really

7   shows serious contempt for the laws of this country, and I

8   just -- with that in mind, it's hard to imagine that someone

9   who it's alleged that's engaged in that conduct, you know,

10  would adhere to conditions of release that a magistrate judge

11  would issue.  So I think there's a serious risk of obstruction

12  of justice.

13          Mr. Kavanaugh highlighted that the government has

14  information that Mr. Caldwell had deleted some evidence,

15  potentially deleted some evidence in this case, and certainly

16  whether that happened or not will have to play out over time,

17  but there's some information before the Court that that has

18  happened.  And just given the allegations in the complaint

19  about mobilization of many people, the weapons found, which

20  Mr. Caldwell certainly has a lawful right to have them, but --

21  at this time, but the potential weapons found with statements

22  after the storming of the Capitol about moving on to State

23  Capitols, it's -- I do think that evidence before me would show

24  that Mr. Caldwell does present a danger to the community and a

25  risk that he would obstruct justice.

1        So I think with those in mind, I think I do have to

2   detain Mr. Caldwell.  I'm certainly sensitive to Mr. Caldwell's

3   medical issues, and I think it would be incumbent upon the

4   Court to make sure that the Marshals are aware of those medical

5   issues and make sure that they make the jail aware of them so

6   that he can be provided with necessary medical care while in

7   the jail.

8        THE DEFENDANT:  Your Honor, may I say something on my

9   behalf?

10       THE COURT:  You certainly may.  Mr. Caldwell, what I

11  would advise you to do is that I can put you and Ms. Lorish in

12  a separate, you know, private breakout room and you-all can

13  talk further, and then she can relay whatever concerns you

14  have.  And I just want to do that to protect your rights, okay?

15       THE DEFENDANT:  That would be great, Your Honor.  I

16  would ask for that at this time, please.

17       THE COURT:  Okay.  Ms. Dotson, could you please do

18  that?

19       THE DEFENDANT:  Thank you, Your Honor.

20       THE COURT:  Yes, sir.

21       (A recess was taken.)

22       MS. LORISH:  Thank you, Karen.

23       Thank you, Your Honor.  I don't believe that

24  Mr. Caldwell has anything else to add at this time.

25       THE COURT:  All right.  Mr. Caldwell, was there

1    anything else?

2            THE DEFENDANT:  No, sir, Your Honor.  Thank you very

3    much.  And thank you for considering bail.

4            THE COURT:  All right.  Well, then Mr. Caldwell, I am

5    going to enter a detention order, and I'll also enter an order

6    that you would be committed to the District of Columbia to

7    answer the charges against you.  And Ms. Dotson, can you

8    contact the Marshals and just make sure that they are aware of

9    Mr. Caldwell -- and perhaps, Ms. Funkhouser, this would be a

10   job for you to contact the Marshals to make sure they are aware

11   of Mr. Caldwell's medical needs.  And if there are any issues,

12   I'd certainly like to know about them, okay?

13           THE CLERK:  Okay, yes, sir.

14           MS. FUNKHOUSER:  Yes, sir, Your Honor.

15           THE COURT:  All right.  Is there anything further to

16   take up in this case today?

17           MR. KAVANAUGH:  No, Your Honor.

18           MS. LORISH:  No, Your Honor.

19           THE COURT:  Okay.  Thank you-all, and take care.

20           MS. LORISH:  Thank you.

21           THE COURT:  All right.

22           (The proceedings concluded at 4:34 p.m.)

23                          **CERTIFICATE**
           I, Mary J. Butenschoen, do hereby certify that the
24   foregoing is a correct transcript of the electronic recording
     in the above-entitled matter.
25                    _____/s/_____01/22/2021
                      Mary J. Butenschoen, Transcriber

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25