IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | No.    1:21-cr-28 (APM) |
| v.                                                          ) | |
| ) | |
| ) | |
| THOMAS EDWARD CALDWELL    ) | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION

The United States respectfully files this memorandum in opposition to Defendant Thomas Edward Caldwell's motion for reconsideration of detention. Defendant Caldwell's motion fails to show information that was both unknown to him at the time of the detention hearing and would have a material bearing on the detention question. To the contrary, the motion argues that the government has misstated or mischaracterized evidence, when the government has relied largely on the defendant's own words, and those words show on their face that Defendant Caldwell plotted with his co-conspirators to stop the certification of the Electoral College vote, prepared to use violence if necessary, stormed the Capitol, and then, in the aftermath, concealed or destroyed evidence of his involvement in these offenses. For these reasons, the Court should maintain the order that the defendant be detained pending trial.

**I.     Background**

On January 19, 2021, Defendant Caldwell was arrested on a complaint charging him with conspiracy, in violation of 18 U.S.C. § 371 (a felony); conspiracy to impede or injure an officer, in violation of 18 U.S.C. § 372 (a felony); destruction of government property, in violation of 18 U.S.C. § 1361 (a felony); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (a felony); entering a restricted building without lawful authority, in violation of

18 U.S.C. § 1752(a) (a misdemeanor); and violent entry on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2) (a felony).  Defendant Caldwell made his initial appearance in the Western District of Virginia on January 19, and he was detained pursuant to 18 U.S.C § 3142(f)(2)(B).

On January 27, 2021, a federal grand jury in Washington, D.C., indicted Defendant Caldwell, and co-defendants Donovan Crowl and Jessica Watkins with conspiracy, in violation of 18 U.S.C. § 371; obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361, 2; and entering a restricted building without lawful authority, in violation of 18 U.S.C. § 1752(a)-(b). On February 12, 2021, this Court held a hearing on Defendant Caldwell's motion for review of detention order.  This Court maintained Defendant Caldwell's detention status. On February 19, 2021, the grand jury returned a superseding indictment that added the charge of obstruction – tampering with documents, in violation of 18 U.S.C. § 1512(c)(1), against Defendant Caldwell, for his deletion or unsending of certain Facebook content that appeared related to the attack on the Capitol on January 6, 2021.

On March 2, 2021, Defendant Caldwell filed the instant motion for reconsideration of detention.

## II.     Legal Standard

Defendant Caldwell styles his pleading as a motion to reconsider an interlocutory order, but the government would submit that he has more accurately filed a motion to "reopen" the detention hearing under 18 U.S.C. § 3142(f).  *See See United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).  Under § 3142(f), a defendant must show "information that was not known to the movant at the time of the hearing and that has a material bearing" on the underlying detention question.

### III.   Argument

Here, Defendant Caldwell contends that now that defense counsel has entered his appearance, consulted with his client, and reviewed discovery, the defense can present a version of facts that would materially impact this Court's detention decision.  He raises three main categories of new information that, from his perspective, should significantly change the Court's view of the strength of the government's case and the risk that he poses to the community:  (1) evidence that he says suggests the attack on the Capitol was not planned as far in advance as the Court may have understood from the facts presented at the February 12 hearing; (2) evidence that he claims undermines the government's assertions about the existence of a "quick reaction force" that would provide weapons to the members of the conspiracy if they were needed; and (3) evidence that, in his view, shows he did not conceal or destroy evidence in the aftermath of the attack.  The evidence cited in the defendant's motion does not undermine the evidence previously presented to this Court:  that Defendant Caldwell joined a conspiracy to stop Congress' certification of the Electoral College vote; that he took overt acts in furtherance of this conspiracy, by helping to coordinate lodging and maps for his co-conspirators, among other steps; that the maps he provided were meant to direct the "quick reaction force" to the fastest route to the Capitol in the event the co-conspirators needed their "heavy" weapons; and that Defendant Caldwell took steps after the attack to cover up his involvement.  For these reasons, there has not been a significant change to the factual findings that underpinned this Court's decision to maintain the detention order, and the Court should deny Defendant Caldwell's motion for reconsideration.

### a. The Evidence of the Conspiracy

None of the new information presented in Defendant Caldwell's motion negates that he conspired with others to stop Congress' certification of the Electoral College vote, took steps to aid this conspiracy, and then participated in the storming of the Capitol itself. The defense begins its motion by pointing to several alleged misstatements made by the government in interpreting text and social media messages sent by Defendant Caldwell and his co-conspirators: namely, "that Caldwell was 1) a Commander in the Oath Keepers, 2) a member of the Oath Keepers, and 3) that he stormed the inside of the Capitol." (ECF No. 53 at 9.) Putting aside that the defendant mischaracterizes the government's arguments, this Court did not rely on any of these alleged misstatements in maintaining the detention order on February 12, 2021.

The only two references to Defendant Caldwell as a "Commander" in the affidavit in support of the complaint and warrant for Caldwell's arrest (hereafter "affidavit") come from co-defendant Donovan Crowl, who refers to Caldwell as "Commander" in a message he sends him, and W-1, who told law enforcement that, around January 14th, that co-defendant Watkins had left Ohio to go stay in Virginia with someone whom W-1 knew as "Tom" or "Commander Tom." Nowhere did the affidavit assert that Caldwell was "a Commander in the Oath Keepers." But the evidence does establish that he plays a leadership role within the Oath Keepers.

As the government told the Court at the hearing on February 12, while the government has not found evidence that Defendant Caldwell was a dues-paying member of the Oath Keepers, the government has proffered evidence, and the indictment alleges, that Defendant Caldwell was an affiliate and supporter of the Oath Keepers. For example, the government has provided the Court with a message Defendant Caldwell sent on November 26, stating, "Tom Caldwell here in Virginia. Yes I did give a call the other day primarily to tell you it was a memorable experience

4

with you and the other Oath Keepers in d.c. Another Maga march is scheduled for Saturday 12 December. Not sure what if anything [Person One] has in mind but I will be there . . . ." (ECF No. 18 at 4.) Similarly, on December 23, Defendant Caldwell explained, "I picked up Signal which is a free app that is encrypted talk and text. Thats how I do some secure comms with the Oathkeepers." (ECF No. 18 at 7.) Additionally, on January 8, 2021, Caldwell sent a Signal message in which he stated, "I have been on the Oathkeepers intel net for months now."[1]

Perhaps most significantly, the government has proffered, and the indictment alleges, that Defendant Caldwell played a leadership role in planning the events of January 6, 2021: by (1) finding lodging just outside Washington, D.C., for himself, co-defendant Watkins, co-defendant Crowl, and a third co-conspirator, Person Three, whom Caldwell said would be serving as part of the "quick reaction force" to support the operations on January 6 (ECF No. 18 at 7-9); (2) distributing maps to the quick reaction force to help it find the quickest route to the Capitol, should its services be required (*id.* at 9); and (3) by discussing whether it would be possible to recruit people with boats to join the plan, so that they could participate in the quick reaction force and ferry "the heavy weapons" across the Potomac River, should that become necessary during the events of January 6 (*id.* at 9).

With respect to whether Defendant Caldwell stormed inside of the Capitol, the government told the Court on February 12 that it has not found video or photographs that show Defendant Caldwell inside the Capitol.  The government *has* found photographs that Defendant Caldwell sent to others along with messages that show how Defendant Caldwell described his conduct in his own words:

---

[1] The entirety of this lengthy message is attached to this pleading as Exhibit 1, as it contains, in Caldwell's own words, a description of his actions on January 6.





Although the defense correctly notes that the indictment removed time stamps—which identified where in a podcast recording certain Zello communications made by co-defendant

Watkins occurred—that had been included in the original affidavit, the defense fails to explain how that removal alters the detention analysis. At the hearing on February 12 before this Court, the government did not suggest when, exactly, it believed that Watkins spoke the words it quoted from the Zello chat. Defendant Caldwell suggests in his motion that those words were likely spoken in the morning, before the riot began, because it is not as noisy in the background as a subsequent communication, in which co-defendant Watkins says, "We are in the mezzanine. We are in the main dome right now. We are rocking it. They are throwing grenades, they are fricking shooting people with paint balls. But we are in here." (ECF No. 53 at 13.) The reporter who obtained the Zello recording,[2] however, said that these excerpts were what he heard on the Zello channel "as I was watching the Capitol riot unfold on my TV." Given that information and the context, it seems likely that Watkins was marching to or outside the Capitol when she uttered, "We have a good group. We have about 30-40 of us. We are sticking together and sticking to the plan." In other words, the march to the Capitol was part of or at least consistent with "the plan." It is thus equally concerning when, later in the recording, an unknown male instructed over the channel, "You are executing citizen's arrest. Arrest this assembly, we have probable cause for acts of treason, election fraud."

    The evidence of Defendant Caldwell's role and intent in planning this offense comes from his own words, in messages quoted in the indictment and the government's opposition to the defendant's first motion for review of detention order:

---

[2] The government has not obtained a copy of the recording from Zello. Excerpts from the recording obtained by the reporter can be listened to in the podcast available here: https://www.wnycstudios.org/podcasts/otm/segments/zello-tapes-walkie-talkie-app-used-during-insurrection-on-the-media. The government has obtained records from Zello confirming that such a channel existed and that Watkins was a member. Based on the one known Zello account the government has found for Defendant Caldwell, Defendant Caldwell does not appear to be a member of the channel. The one Zello user account that the government has found for Defendant Caldwell is/was a member of only one Zello channel, called "OK DC Op," which Defendant Caldwell's account joined on November 13, 2020.

- On December 30, Defendant Caldwell exchanged a number of messages with co-Defendant Watkins, and he noted that he was in contact with and was recommending possible lodging ideas for an individual (Person Three) who was "committed to being the quick reaction force anf bringing the tools if something goes to hell. That way the boys don't have to try to schlep weps on the bus. He'll bring them in his truck day before." (ECF No. 18 at 7-8.)

- On December 31, Defendant Caldwell posted to Facebook: "It begins for real Jan 5 and 6 on Washington D.C. when we mobilize in the streets. Let them try to certify some crud on capitol hill with a million or more patriots in the streets. This kettle is set to boil…."

- On January 1, Defendant Caldwell exchanged a number of messages with co-defendant Crowl, in which he stated, "I will probably do pre-strike on the 5th though there are things going on that day. Maybe can do some night hunting. Oathkeeper friends from North Carolina are taking commercial buses up early in the morning on the 6th and back same night. [Person Three] will have the goodies in case things go bad and we need to get heavy." (ECF No. 18 at 8-9.)

- On January 2, Defendant Caldwell and co-defendant Crowl continued to exchange messages about the hotel where they planned to stay in Arlington, Virginia, and Defendant Caldwell told co-defendant Crowl: "This is a good location and would allow us to hunt at night if we wanted to. I don't know if [Person One] has even gotten out his call to arms but its a little friggin late. This is one we are doing on our own. We will link up with the north carolina crew."

- On January 8, after the attack, in response to co-defendant Crowl sending him a message stating, "Love the hell outta you, Tom," Defendant Caldwell responded: "You, too, my dear friend.  We stormed the gates of corruption together (although on opposite sides of the building) so between that and our first meeting and getting to know you since I can say we will always be brothers!"

8

The messages cited by Defendant Caldwell (pp. 14-15) negate neither probable cause for the offenses charged nor Defendant Caldwell's dangerousness.  As the defense notes in its motion, shortly after the attack on the Capitol, Defendant Caldwell messaged one contact:

> Did you see us storm the Capitol today?  [Person Two] is exhausted and will give you the long version later but suffice to say I am a rabble rouser of the first order and when provoked and attacked by the cops for no reason as we were oeacefully assembled it was instinct to snatch up my American flag and race for yhe capitol steps with while the patriot stereos eere blasting the song "we're not gonna take it " and we were screaming along as one.  I will send you now a sequence of pics as we get bearer, climb through the construction and scaffolding meant to stop us, up the stairway where they were shooting teargas and the grins after we were in as well as the view looking out from the balcony.

Defendant Caldwell messaged another friend:

> Hell yeah!  [Person Two] and I rolled with the Oathkeepers and some other militia.  Heard the President then marched to Capitol hill.  Started addressing the like minded folks around us.  Cops out of nowhere started throwing flash bang grenades and then teargassed a kid's group.  No shit.  Then we heard that Pence fucked us.  Wr had over a million oeople here.  Then the lying media said Trump supporters were breaking through barricades so i said if we're going to get blamed, might as well do it so I grabbed up my American flag and said let's take the damn capitol so people started surging forward and climbing the scaffolding outside so I said lets storm the place and hang the traitors.  Everybody thought that was a good idea so we did.  They threw some gas at it but we climbed the steps after breaking 2 rows of barricades, yhen got on the parapets and the people in front of me broke throgh the doors and started duking it out with the pigs who broke and ran.  Then we started stealing the cops riot shields a d throwing fire extinguishers through windows.  It was a great time.  I will send you some sequence pictures

Defendant Caldwell later texted the same person:

> This is the view from the west balcony after ee broke through all of the construction and made it upstairs and inside.  Came out ans [Person Two] helped people rinse tear gas out of their eyes.  If we'd had guns I guarantee we would have killed 100 politicians.  They ran off and were spirited away through their underground tunnels like the rats they were.

Defendant Caldwell's own words thus belie his claim that he did not discuss or plan storming the Capitol until the moments before he did so.  Moreover, Caldwell's focus on whether or when he or those with whom he was communicating intended to force his way inside the Capitol is beside

9

the point. He is alleged to have conspired with others to "to stop, delay, and hinder Congress's certification of the Electoral College vote." He is not charged with conspiring to storm the Capitol. The fact that he and others forced entry into the Capitol building or the restricted grounds outside are overt acts in furtherance of the conspiracy regardless of when they formed the intent to take these actions.

Evidence that the government will disclose to the defense this week—a Signal chat called "DC OP: Jan 6 21"—shows that individuals, including those alleged to have conspired with the defendant, were actively planning to use force and violence. The participants in this chat include: Person One, Kelly Meggs, Jessica Watkins, and regional Oath Keeper leaders from multiple states across the country. To date, there is no evidence that Caldwell participated in the chat, but the investigation is ongoing. The chat discusses members and affiliates of the Oath Keepers coming to Washington, D.C., for the events of January 5-6, 2021, to provide security to speakers and VIPs at the events. There is no discussion of forcibly entering the Capitol until January 6, 2021. However, there is talk about being prepared for violence. Person One warns the group, "DO NOT bring in anything that can get you arrested. Leave that outside DC." He goes on to say, "We will have several well equipped QRFs outside DC. And there are many, many others, from other groups, who will be watching and waiting on the outside in case of worst case scenarios." Person One also says, "Highly recommend a C or D cell flashlight if you have one. Collapsible Batons are a grey area in the law. I bring one. But I'm willing to take that risk because I love em. Good hard gloves, eye pro, helmet. In a pinch you can grab Mechanix gloves and a batters helmet from Walmart. Bring something to put on your noggin. Antifa likes brikes."

These messages echo the words of Person One in the call for action[3] he posted to the Oath Keepers website on January 4, 2021, in which he stated: "It is CRITICAL that all patriots who can be in DC get to DC to stand tall in support of President Trump's fight to defeat the enemies foreign and domestic who are attempting a coup, through the massive vote fraud and related attacks on our Republic. We Oath Keepers are both honor-bound and eager to be there in strength to do our part," including "prepar[ing] to do whatever must be done to honor our oaths[.]" (ECF No. 18 at 2.) These statements and messages all show that the co-conspirators joined together to stop Congress's certification of the Electoral College vote, and they were prepared to use violence, if necessary, to effect this purpose. It does not matter whether they planned to use this violence to support the president when he invoked the insurrection act or to attack the Capitol if the vice president allowed the certification to go forward—under either scenario, they were plotting to use violence to support the unlawful obstruction of a Congressional proceeding.[4]

The Signal chat referenced above shows that the group—which included at least two individuals alleged to have conspired with Caldwell—was activating a plan to use force on January 6. At approximately 1:38 p.m., Person One wrote, "All I see Trump doing is complaining. I see no intent by him to do anything. So the patriots are taking it into their own hands. They've had enough." At 2:14 p.m., an individual leading the coordination of the security details run by the Oath Keepers on January 5-6 stated, "The have taken ground at the capital[.] We need to regroup

---

[3] See https://oathkeepers.org/2021/01/oath-keepers-deploying-to-dc-to-protect-events-speakers-attendees-on-jan-5-6-time-to-stand/ (last accessed on February 9, 2021).

[4] In this light, the message cited by Defendant Caldwell that he wrote on November 26 (ECF No. 53 at 16), in which he predicted that "if President Trump is cheated out of office," but nonetheless were able to stay in the White House, Antifa would to rise up in opposition, and they would need to use violence to counter Antifa, supports the government's evidence and theory of the case: that the co-conspirators plotted to stop the certification of the Electoral College vote and were prepared to use violence, if necessary, to achieve this goal.

any members who are not on mission." Person One then reposted that message and instructed the group: "Come to South Side of Capitol on steps" and then sent a photograph showing the southeast side of the Capitol. At 2:41 p.m., Person One posted another photograph showing the southeast side of the Capitol with the caption, "South side of US Capitol. Patriots pounding on doors[.]" At approximately 2:40 p.m., the individuals in the "stack," to include co-defendants Kelly and Connnie Meggs, Jessica Watkins, Graydon Young, Laura Steele, Donovan Crowl, and Sandra Parker, forcibly entered the Capitol through the Rotunda door in the center of the east side of the building. On the other side of the Capitol, at 2:48 p.m., Defendant Caldwell wrote to his Facebook contacts, "We are surging forward. Doors breached."

Kelly Meggs has denied that any one in particular made the decision or gave the command for the group to enter the building. One additional charged member of the group has denied knowing that Person One was on the Capitol grounds on January 6, 2021. However, publicly available photographs and video show someone consistent in appearance with Person One on the east side of the Capitol on the afternoon of January 6, 2021. At one point, around 4:00 p.m.—as many rioters were exiting the Capitol—a large group that included co-defendants Kelly Meggs, Connie Meggs, Graydon Young, Laura Steele, other members of the stack, and other individuals wearing "Oath Keepers" clothing and insignia who also stormed the Capitol gathered around Person One and stood around waiting for at least ten minutes in that location.

### b. The Evidence of the Quick Reaction Force

Defendant Caldwell asserts that "the Government overstated concerns regarding Defendant Caldwell's references to a 'Quick Reaction Force.'" (ECF No. 53 at 17.) The defendant's belated effort to sanitize, if not parody, the quick reaction force is in stark contrast to his and others' words about it leading up to January 6. On December 30, Defendant Caldwell sent a message to co-defendant Watkins in which he stated that Person Three "is committed to being the quick reaction force anf bringing the tools if something goes to hell. That way the boys don't have to try to schlep weps on the bus. He'll bring them in his truck the day before." (ECF No. 18 at 8.) Defendant Caldwell also suggested that Person Three was going to stay at the same hotel where he and co-defendants Watkins and Crowl would be staying. Records from that hotel show that three rooms were reserved in Person Three's name. One of those three rooms was paid for by a credit card in Person Three's name; the other two rooms were paid for by a credit card in co-defendant Kelly Meggs' name.

Additionally, as noted in its opposition to Defendant Caldwell's first motion to reconsider detention, evidence shows that Defendant Caldwell sent a text message on January 3, 2021, to a member of the "Three Percenters" group, in which he asked, "[H]ow many people either in the militia or not (who are still supportive of our efforts to save the Republic) have a boat on a trailer that could handle a Potomac crossing? If we had someone standing by at a dock ramp (one near the Pentagon for sure) we could have our Quick Response Team with the heavy weapons standing by, quickly load them and ferry them across the river to our waiting arms." (ECF No. 18 at 9.) On the same day, Defendant Caldwell sent a message through Signal to Person Three, in which he said, "I'm calling it a night. Got feelers out in the boat idea, will finish new map tomorrow. Early

wake up full day tomorrow.  Sleep well, bro: CAG is on the case!"  On January 4, 2021, Defendant Caldwell sent a series of maps to one of the individuals who had agreed to serve as the "quick reaction force."  In an email with the subject line "NEW MAPS RELATIVE TO HOTEL AND INGRESS FOR QRF," for example, Defendant Caldwell sent some maps which, he advised his co-conspirator, "walk you from the hotel into D.C. and east toward the target[.]"  (ECF No. 18 at 9.)

The government does not dispute Defendant Caldwell's assertions about the age of Person Three, but the government questions why that fact would impede Person Three from driving weapons to the Capitol to aid the co-conspirators if requested.  The evidence to date strongly supports the conclusion that Defendant Caldwell was actively working with at least two people to have some number of individuals on standby, armed with "heavy weapons," and prepared to quickly get them to the team operating within the District on January 6 if they were needed.[5]  This evidence supports detention.

### c.  The Evidence of Obstruction/Tampering With Documents

Finally, Defendant Caldwell's new counsel states that prior counsel failed to challenge the government's evidence of obstruction and asks this Court to reconsider the order of detention on the basis of the arguments and facts he now presents.  These facts and arguments should not give this Court pause about detaining defendant pursuant to the authority under 18 U.S.C. §3142(f)(2)(B) for cases that involve "a serious risk that such person will obstruct or attempt to

---

[5] The government is also investigating whether there were additional quick reaction force teams, besides the one led by Person Three, supporting the co-conspirators' efforts on January 6.  In his January 4th post to the Oath Keepers website, Person One also stated, "As we have done on all recent DC Ops, we will also have well armed and equipped QRF teams on standby, outside DC, in the event of a worst case scenario, where the President calls us up as part of the militia to to assist him inside DC.  We don't expect a need for him to call on us for that at this time, but we stand ready if he does (and we also stand ready to answer the call to serve as militia anytime in the future, and anywhere in our nation, if he does invoke the Insurrection Act)."

obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

There is strong evidence that Defendant Caldwell made efforts to obstruct justice by tampering with evidence. First, the government has contended that Defendant Caldwell deleted Facebook content relevant to his involvement and the involvement of his co-conspirators in the attack on the Capitol. One example provided by the government was a video that Defendant Caldwell sent to co-defendant Crowl a few days after the attack and then "unsent" or deleted. The following is a screenshot of the portion of this exchange from Facebook records:

```
Author  Donovan Crowl (Facebook: 100003473512615)
  Sent  2021-01-08 01:46:49 UTC
  Body  Hey Brother, we are just about to Ben and Sandie's. Had a good
        trip. We are gonna have dinner then bunk there tonight. Can you
        send me that last video again in a text msg.? I'm having trouble
        sharing it already.

    Author  Tom Caldwell (Facebook: 100044379276273)
      Sent  2021-01-08 01:53:05 UTC
Removed by  2021-01-14 17:29:24 UTC
    Sender
      Body  Tom unsent a message

    Author  Tom Caldwell (Facebook: 100044379276273)
      Sent  2021-01-08 01:55:45 UTC
Removed by  2021-01-14 17:29:41 UTC
    Sender
      Body  Tom unsent a message

    Author  Donovan Crowl (Facebook: 100003473512615)
      Sent  2021-01-08 01:58:40 UTC
      Body  Thank you Sir. Love the hell outta you Tom.

    Author  Tom Caldwell (Facebook: 100044379276273)
      Sent  2021-01-08 03:13:58 UTC
      Body  You, too, my dear friend! We stormed the gates of corruption
            together (although on opposite sides of the building) so between
            that and our first meeting and getting to know you since I can say
            we will always be brothers!
```

Defendant Caldwell quotes a website which states that "Facebook Messenger allow users only 10 minutes to un-send their messages." The government is confirming whether that information is accurate; however, the Facebook records above state that the messages were "Removed by Sender"

15

on January 14, 2021, at 17:29 UTC (or 12:29 EST). That is the same day co-defendants Watkins and Crowl left Ohio to travel to Defendant Caldwell's residence in Virginia.

Also that day, Defendant Caldwell sent messages to co-defendant Crowl directing him to conceal his travel to Defendant Caldwell's home, writing, "Don't forget to double back an exit or two at least twice to make sure not followed." In light of that comment, it is reasonable to interpret the subsequent message—"Bring full battle rattle to stash here if you want"—as being an offer for co-defendant Crowl (and perhaps also co-defendant Watkins) to hide the "battle rattle" that they wore while storming the Capitol at Defendant Caldwell's home.

The defense references Defendant Caldwell's history[6] of military and government service to support its suggestion that Defendant Caldwell would never attempt to obstruct justice. The government agrees that someone with experience in those positions should know better, but the evidence suggests quite the contrary. On January 9, 2021, in response to co-defendant Watkins lamenting the way the media was covering her participation in the events of January 6, Defendant Caldwell stated, "Fear not. One asshole had that on a blog, I copied it. Can't even find the blog today but it was just a thumbnail crested by the prick most likely. Wish I had written his name down. Anyway probably very few others saw it and it is nowhere on the news2share site from which it is taken. If any shit should ever come down, you were with me all the time and I'll swear to it." To her credit, co-defendant Watkins replied, "There's too much evidence contrary. Perjury bad, lol. I won't worry then..." Defendant Caldwell responded, "Please don't. What we did was righteous."

---

[6] The government erred in representing the defendant's criminal history at the initial detention hearing in the Western District of Virginia. *See* ECF No. 10-1 at 20 ("[Defendant Caldwell] does have minimal criminal history and that appears that -- all I am aware of is that it appears to be several traffic matters that are in fugitive status, but that is the only evidence that I have regarding his criminal history."). Fortunately, that error played no part in the detention analysis conducted by the judge in the Western District of Virginia and was never presented to this Court.

## IV.  CONCLUSION

For all these reasons, the government submits that Defendant Caldwell has not presented information that constitutes "a significant change in the law or facts since the submission of the issue [of whether Defendant Caldwell should be detained] to the Court." *Slough*, 61 F. Supp. 3d at 108.  Defendant's motion for reconsideration of detention should be denied.

                Respectfully submitted,

                CHANNING D. PHILLIPS
                ACTING UNITED STATES ATTORNEY

By: _____
                Kathryn L. Rakoczy
                Assistant United States Attorney
                D.C. Bar No. 994559
                Ahmed M. Baset
                Troy A. Edwards, Jr.
                Jeffrey S. Nestler
                Assistant United States Attorneys
                U.S. Attorney's Office for the District of Columbia
                555 4th Street, N.W.
                Washington, D.C. 20530

                */s/ Alexandra Hughes*
                Alexandra Hughes
                Justin Sher
                Trial Attorneys
                National Security Division
                United States Department of Justice
                950 Pennsylvania Avenue
                NW Washington, D.C. 20004

Dated:       March 8, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2021, I sent a copy of the foregoing via the Court's electronic filing system to counsel for the defendant.

                                              KATHRYN L. RAKOCZY
                                              Assistant United States Attorney