## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES                              *

vs.                                        *     Case No.: 21-CR-28-APM

THOMAS EDWARD CALDWELL                      *

     *    *    *    *    *    *    *    *    *    *    *

## DEFENDANT'S REPLY REGARDING RECONSIDERATION OF DETENTION

COMES NOW, Thomas E. Caldwell, the Defendant, by and through counsel, David W. Fischer, Esq., and sets forth the below memorandum in reply to the Government on the issue of reconsideration of detention.

## The Government is in Full Retreat

In his reconsideration filing, Caldwell practically "double-dog dared" the Government to set forth its evidence "lay[ing] out, in detail, the <u>specific</u> 'plan' to 'invade' the Capitol" by Caldwell and his alleged conspirators.  <u>ECF</u> No. 53, pp. 6-7. Caldwell likewise challenged the Government to provide the Court with witness statements, confessions, or other evidence of the "detailed planning and execution" and the "logistics" of the premeditated, specific plan to breach the Capitol.  <u>Id</u>.  Instead of proffering such evidence in its reply, the Government <u>tacitly concedes</u> it has no such evidence (<u>see</u> <u>infra</u>), and then retreats to a new, dubious legal theory of the case:

Caldwell's focus on whether or when those with whom he was communicating *intended* to force his way inside the Capitol *is beside the point*. He is alleged to have conspired with others to 'stop, delay, and hinder Congress's certification of the Electoral College vote.' *He is not charged with conspiring to storm the Capitol*. The fact that he and others forced entry into the Capitol building or the restricted grounds outside are overt acts in furtherance of the conspiracy *regardless of when they formed the intent to take these actions*.

ECF No. 66, pp. 9-10 (emphasis added). First, for purposes of detention, Caldwell was absolutely "charged with conspiring to storm the Capitol." The entire "conspiracy" count (Count One) Caldwell is charged with is based on his alleged, weeks-long plot to forcibly enter the Capitol. The Government's lengthy "speaking" indictment, in fact, sets forth numerous "overt acts" committed by Caldwell dating back to the November election, specifically alleging that:

As described more fully herein, CALDWELL, CROWL, WATKINS, SANDRA PARKER, BENNIE PARKER, YOUNG, STEELE, KELLY MEGGS, and CONNIE MEGGS, *planned with each other*, and with others known and unknown, *to forcibly enter the Capitol on January 6, 2021,* and to stop, delay, and hinder the Congressional proceeding occurring that day.

(Indictment, ¶22) (emphasis added). The indictment alleges a specific conspiracy centered around "the Oath Keepers," and references their alleged recruitment, planning, military training, and communications, all for the specific purpose of coming to the District to stop the January 6th electoral certification process by "forcibly entering the Capitol."

The entire *raison d'etre* for the indictment is premised upon allegations that the Oath Keepers methodically premeditated a plan, developed over weeks, to forcibly enter

the Capitol in an attempt to stop the electoral certification process.  Through its filing, however, the Government has effectively admitted that it does not possess one piece of "smoking gun" evidence that the "overt acts" that occurred <u>before</u> January 6th had anything to do <u>specifically</u> with a plot to invade the Capitol.  The Government's tacit admission to lacking evidence of pre-January 6th plotting to invade the Capitol is substantial as it relates to Caldwell's detention status.  That is, at Caldwell's prior detention hearing, the Court largely justified Caldwell's detention on the (now debunked) grounds that Caldwell and others were conspiring, "as early as November," to "plot an insurrection against the government of the United States."[1]  (Det. Hrg. Transcript, pg. 60) (Feb. 12, 2021).  As such, the Government's acknowledgment as to their lack of evidence vis-à-vis premeditation constitutes substantial grounds for the Court to reconsider and release Caldwell.

The Government's claim that the "fact that [Caldwell] and others forced entry into the Capitol or the restricted grounds outside are overt acts of in furtherance of the conspiracy *regardless of when they formed the intent to take these actions*" is quite simply wrong.  Overt acts in furtherance of a conspiracy presuppose that Caldwell agreed to join the conspiracy and was aware of its criminal objective.  The Government has not

---

[1] In weighing the "nature and circumstances" of Caldwell's offense, the Court also opined that "the concern with Mr. Caldwell is less what he specifically did on January 6th . . . [b]ut what he did prior to January 6th, [which wa]s clearly [to] engage in planning and preparation for . . . the incursion that took place at the Capitol[.]"  (Transcript, pg. 64).  In short, the Court's detention decision was predicated on the Government's claim that Caldwell engaged in a lengthy, weeks-long, sophisticated plot to invade the Capitol. Obviously, the Court was misinformed on this issue.

set forth evidence that Caldwell was aware of any conspiracy to forcibly enter the Capitol to stop electoral certification <u>before</u> January 6th.  As such, it absolutely is not "beyond the point" as to when Caldwell "formed the intent" to storm the Capitol and stop certification.

Caldwell, for example, can't be on the "conspiracy hook" for an Oath Keeper "stack" entering the Capitol if he a) was unaware of their plan to enter the Capitol to stop certification and, b) never agreed to join their conspiracy.  The facts supporting Caldwell's assertion that he had no intent on January 6th to join a conspiracy to stop the electoral process are strong.  First, the Government, as more fully explained <u>infra</u>, has not set forth one piece of smoking gun evidence that shows that Caldwell <u>or the Oath Keepers</u> had a premeditated plan, prior to January 6th, to enter the Capitol and stop the electoral process.  Second, Caldwell never entered the Capitol and did not damage any property.  Third, Caldwell did not, as the Government admits, utilize Zello on his phone that day and, thus, <u>was incommunicado with Oath Keepers</u>.  Fourth, Facebook messages and pictures prove that Caldwell and his wife were <u>separate and apart from the Oath Keepers</u> after President Trump gave his speech at the White House.  Fifth, as the Government's filing unwittingly admits, while the commotion at the Capitol took place, Caldwell was taking selfies of himself and his wife and sending Facebook messages to far-away friends, giving them a play-by-play as to what was occurring.  In short, whether Caldwell is guilty of a conspiracy (or other crimes charged in the indictment) greatly depends on when the Oath Keepers "formed the intent" to force entry into the Capitol.  If

the Oath Keeper stack "formed the intent" to enter the Capitol and disrupt the proceedings spontaneously in the afternoon of January 6th, Caldwell's claim of innocence is powerful.

Interestingly, the Government and Caldwell cite the same messages to support their arguments.  To the defense, Caldwell's "post-game analysis" of the events of January 6th clearly shows that there was no premeditated plan to charge the Capitol, and that the crowd reacted to a variety of factors on the ground to spontaneously move toward the Capitol.  By contrast, the Government reads the messages literally to mean that Caldwell was charging at the Capitol.  Unfortunately, the Government doesn't seem to get the joke.  Caldwell is 65 years old, has had multiple spinal fusions, is a 100% disabled veteran, was using the staff of an American flag to ambulate with on January 6th, and, as the Government's own exhibit shows, self-describes himself as an "old cripple."[2]  ECF No. 66-1, pg. 3.  Comically, the Government takes Caldwell's social media Walter Mitty-isms literally, as if this "old cripple" was going to rip his shirt off, grab an American flag, jump through barricades, run the Capitol stairs, and lead the charge of the peasants. Caldwell's somewhat contemporaneous Facebook messages completely back up his claim that the breach of the Capitol was a spontaneous event.

---

[2] Ironically, the 4-page Government exhibit is highly exculpatory for Caldwell, especially when read in the context of his significant physical limitations.

## <u>The Government tacitly admits it has no evidence of a conspiracy prior to Jan. 6th</u>

In a bombshell it dropped in its filing regarding a Signal chat called "DC OP: Jan 6 21," the Government effectively concedes that it has no evidence to back up its claim that the Capitol breach was a long-planned, premeditated operation.  This encrypted chat room counted as its participants a veritable Who's Who of the Oath Keeper leaders and members from around the country, including co-defendants in the instant case.  To its credit, the Government concedes that "there is no evidence that Caldwell participated in the chat[.]"  The Government also concedes that the chatter among Oath Keepers on Signal was a plan to come to the District "to provide security to speakers and VIPs at the events."  Most damning, however, is the Government's concession that the Signal chat contained "no discussion of forcibly entering the Capitol until January 6, 2021."[3]  <u>ECF No. 66, pg. 10</u>.  In other words, the Government has now interviewed hundreds of witnesses and reviewed tens of thousands of text messages, Facebook messages, tweets, emails, and, most recently, encrypted messages among Oath Keeper leaders and members, <u>but still can produce no concrete, smoking gun evidence that anyone had a pre-planned, premeditated plan to storm inside the Capitol</u>.  In terms of reconsideration of Caldwell's detention, again the Court's prior decision to detain Caldwell was based substantially on the Government's (now debunked) claim that Caldwell and others were engaged in a sophisticated, lengthy plot to take the Capitol.

---

[3] The Government's argument that Caldwell has not presented "information that was not known to the movant at the time of the hearing and that has a material bearing" on the Court's detention decision is blown out of the water by the exculpatory Signal evidence.

The Government attempts to spin this damning Signal evidence, ominously pointing out that the Signal chat had "talk about being prepared for violence," and noting that the national leader of the Oath Keepers encouraged those planning to attend the January 6th rally to consider bringing batons, hard gloves, goggles, and helmets, but to "[l]eave outside DC" any weapon "that can get you arrested."  The Government's claim that "being prepared for violence" is the equivalent of a coordinated attack to forcibly enter the Capitol to stop certification is ludicrous.  Actually, the recommendations from the "national leader" of the Oath Keepers seems fairly straight forward:  Do everything to protect your physical safety with <u>defensive</u> equipment but <u>obey Washington, D.C.'s strict weapons laws</u>.  Most importantly, buried in the Government's rendition of the Signal evidence is the national leader's purpose for recommending that his members be prepared:  "Bring something to put on your noggin.  Antifa likes brikes [(bricks)]." <u>ECF No. 66, pg. 10.</u>

This Signal evidence is highly exculpatory for Caldwell.  It verifies everything that Caldwell and other defendants have told this Court.  There was no premeditated "plan" to invade the Capitol.  The purpose of Oath Keepers coming to the District, moreover, was to perform security for the Trump rally and march, not to invade the Capitol.  And all of the social media chatter about "operations," "hunting," "reconnaissance," "QRFs,"[4] and the like was in reference to <u>protecting rally supporters</u>

---

[4] The Court's concerns regarding chatter about a "Quick Reaction Force" were predicated upon the Government's proffer that such a force was part of an overall strategy to lay siege on the Capitol.  Thanks to Signal evidence, however, the Court now understands

from Antifa.  As Caldwell was not a party to the Signal chat, his claim of having no

knowledge that the Oath Keeper stack would enter the Capitol seems very plausible.  It

also confirms the obvious:  Recommending a nice hotel (with an AARP discount) to out-

of-state rally-goers is not evidence of a conspiracy to storm the Capitol and stop an

election certification.[5]

### A Recently Discovered Message Further Debunks the Government's Case

The Government's claim that Caldwell, Watkins, and Crowl -- the original

defendants indicted -- conspired to overtake the Capitol was questionable from the

beginning.  When originally charged, the Government described this triumvirate's actions

as such:  "According to the indictment, the three defendants *initiated their*

*communications and coordination in November 2020* and continued through on or about

January 19, 2021, when Caldwell was arrested."  (Dept. of Justice Pr. Rel., January 27,

2021) (emphasis added).  Contrary to the Government's indictment, however, Facebook

---

that the "QRF" was nothing but a contingency plan hatched up by retired military guys
strategizing in the event that Antifa launched a coordinated attack against rally-goers.
Most importantly, Caldwell and others were steadfast in making sure that any such plan
was done in accordance with the law, otherwise the QRF would have been stationed in
D.C., not Virginia.  Ironically, had the U.S. Capitol Police leadership engaged in the level
of strategic planning that Caldwell and others did, the Capitol would have never been
breached.

[5] In a Facebook message dated December 24, 2020, Caldwell explained to a contact the
reason why he recommended a particular hotel:  "Be careful if your hotel is in D.C.
Antifa maggots troll the lobbies and sidewalks looking [f]or people to assault . . ..  I
would recommend a motel/hotel in Virginia."  Once again, the Government overlooks the
clear concern from Caldwell and others about Antifa attacking Trump supporters.

evidence recently obtained proves that as late as December 29th, co-defendants Watkins and Crowl were not involved in a conspiracy to storm the Capitol.  In a Facebook message on December 29th, Watkins, a.k.a. "Jolly Roger," messaged Crowl as follows:

**Author** Jolly Roger (Facebook: [number redacted])
**Sent** 2020-12-29 22:45:31 UTC
**Body** Are you planning on going to Illinois still? I'm thinking we are gonna go to D.C. on Jan 6th.

In this message, Watkins asks Crowl whether he is "still" planning on "going to Illinois" (on January 6th) and states that she is "thinking" about going to the District on January 6th.  In other words, nine days before the Capitol was breached, neither Crowl nor Watkins had firm plans to be in Washington on January 6th.  Again, the Government's bold claims of a grand, premeditated conspiracy to invade the Capitol is debunked by evidence it possesses.  The Government's blind loyalty to its rushed conclusion that the Capitol breach was premediated flies in the face of the evidence.[6]

---

[6] Apparently, the Government's auditory functions have also been affected by a desire to match its evidence to a pre-drawn conclusion.  A separate prosecution team handling the detention hearing of "Proud Boy" defendant Ethan Norton, for example, grossly mischaracterized one of Your Honor's rulings in Ms. Watkins's detention hearing, writing in court filings:

> Defendant [(Nordean)] also contends that Destruction of Property is not a "crime of violence" such that it qualifies for detention pursuant to 18 U.S.C. § 3142(f)(1)(A). Def. Motion, at 7-10. Defendant is, again, incorrect.

> "Faced with an identical argument posed by another Capitol rioter—albeit one affiliated with the Oath Keepers, rather than the Proud Boys—*Judge Mehta ruled from the Bench* that Destruction of Property, in violation of 18 U.S.C. § 1361, *is a crime of violence*. United States v. Watkins, Case No. 21-cr-28-3 (J. Mehta February 26, 2021).

## Caldwell Does Not Pose a Danger to the Community

Citing private, off-color jokes where Caldwell discussed "hanging the traitors" and going after politicians, the Government attempts to characterize the defendant as a danger to the community. Caldwell's "locker room" talk and male bravado, however, was not intended for public consumption, was likely done under the influence of prescription painkillers,[7] and didn't result in him committing one act of violence—on January 6th or before. Caldwell's physical condition is very poor. According to appointment calendars shared by Caldwell's wife, Caldwell had 41 medical appointments in 2019 and 22 medical appointments in a COVID-affected 2020. Of the appointments, 55 were for his neck and spine issues. Caldwell cannot walk for more than 100 feet without taking a break. In reality, Caldwell is a beaten-down man who is suffering in pain and agony in

---

United States v. Nordean, 21-MJ-195 (ZMF), ECF No. 17, Govt. Det. Memo., pg. 3-4 (emphasis added). After being called out on this significant inaccuracy, the prosecution team in that case retracted its mischaracterization of the Court's ruling, which actually expressed significant skepticism that Destruction of Property constituted a crime of violence. The Proud Boy prosecution team also inaccurately claimed that Nordean was engaging in encrypted communications via his cell phone during the events of January 6th, but had to retract this claim when challenged on the grounds that Nordean's cell phone had died hours before the Capitol riot. U.S. v. Nordean, MJ-21-195, (Tr. at 38). To be clear, undersigned counsel firmly believes that agents and lawyers for the Government are upstanding and honest people. However, the pattern of significant inaccurate information being provided to the Court clearly shows that the Government has rushed this investigation, which has resulted in multiple mistakes.

[7] Both Caldwell and his wife indicate that after standing up for more than 14 hours on January 6th, Caldwell had to be heavily medicated with his prescription painkillers because of excruciating back pain. The text and Facebook messages that both sides have referenced occurred in the evening of January 6th, while Caldwell lay in bed "doped up" on painkillers.

his solitary cell, unable to be treated and medicated by his orthopedic doctor, and surrounded by COVID-infected inmates.  Caldwell poses zero danger to the public.  He now sits in a wheelchair, in excruciating pain because of his inability to receive proper medical care.

While Caldwell's harmless (and unfortunate), <u>private</u> rhetoric resulted in no danger to others, the Government's filings, ironically, have caused a clear danger to the community.  First, the Government has slandered Caldwell by inaccurately portraying the Oath Keepers as a "hate group,"[8] then inaccurately claiming that he was a member and Commander (or leader)[9] in this "hate group" who planned for two months to storm

---

[8] The Government cites left-leaning organizations like the SPLC and the ADL for the proposition that the Oath Keepers organization is a "hate group."  The Government's reliance on these groups is akin to citing the *National Review* for the claim that the Sierra Club is a "radical Leftist group of socialist tree-huggers that wants to shut down the economy and make America a land of hunters and gatherers."  Tellingly, after reviewing discovery, undersigned counsel did not locate one example of racial, ethnic, or other prejudice in Caldwell's phone downloads and social media history.  Yet the Government's filings, aided by an uncritical media, has slandered this man as a "white supremacist."

[9] The Government's suggestion that undersigned counsel mischaracterized its affidavit regarding allegations that Caldwell had a "leadership role" in the Oath Keepers is without merit.  The thin strand that FBI agents used to assert Caldwell's "leadership role" were messages referring to Caldwell as "Commander Tom."  FBI agents obviously believed that Caldwell was a "Commander" in the Oath Keepers and, in fact, were quite surprised to find out that Caldwell was a real-life Navy Commander (retired).  Major mistakes like this occur when the Government emphasizes quantity (in terms of arrests) instead of quality (in terms of getting it right).

"inside" the Capitol on January 6th.[10]  The Government's inaccurate claims have led to

death threats against the Caldwell family.

Additionally, the Government's selective editing and inaccurate claims have

misinformed the public and caused unnecessary panic in the District.  Most troubling was

the Government's incendiary—and highly inaccurate-- suggestion in previous charging

documents that Caldwell and Oath Keepers were chasing down Members of Congress,

trying to trap and kill them in the hallways of the Capitol.  The Government charged:

> On January 6, 2021, while at the Capitol, CALDWELL received the
> following Facebook message: "All members are in the tunnels under capital
> seal them in. Turn on gas". When CALDWELL posted a Facebook message
> that read, "Inside," he received the following messages, among others: "Tom
> take that bitch over"; "Tom all legislators are down in the Tunnels 3floors
> down"; "Do like we had to do when I was in the cor[ps] start tearing o[u]t
> flo[o]rs go from top to bottom"; and "Go through back house chamber doors
> facing N left down hallway down steps.

See, e.g., ZMF--1:21-mj-00119 (Amend. Crim. Comp. Jan. 19, 2021).  As a result of the

Government's charging document, the media blared alarmist headlines and stories,

including the following representative sample from the Associated Press:

> Authorities say *the Oath Keepers communicated* during the attack about
> where lawmakers were. At one point during the siege, Caldwell received a
> message that said "all members are in the tunnels under the capital,"
> according to court documents. "Seal them in turn on gas," it said.  Other
> messages read: 'Tom all legislators are down in the Tunnels 3floors down.'

---

[10] Since Caldwell is screaming from the jail that he never entered (or attempted to enter)
the inside of the Capitol, and the Government has examined more than 100,000 photos
and videos in and around the Capitol, respectfully, at this point it is a fact that Caldwell
never entered the Capitol.  The Government obviously misinterpreted private Facebook
communications.

and "go through back house chamber doors facing N left down hallway down steps," according to court documents."

*The Politico* (via the AP), *Man charged in Capitol riot worked for FBI, lawyer says* (Feb. 9, 2021) (emphasis added).[11]  These stories sent shockwaves through the District, but were based on misinformation provided by the Government.

This week, undersigned counsel was contacted by members of the national media who asked:  Why has the Government dropped from its latest indictment the above-referenced, incendiary claim?  Accordingly, undersigned counsel reviewed the relevant Facebook messages.  The Government, lamentably, took the Facebook messages completely out of context.  The messages show Caldwell engaged in a "group chat" with two men, both of whom were unmistakably messaging Caldwell from locations more than 60 miles from the District.[12]  When Caldwell messaged, like a football play-by-play

---

[11] See also Devlin Barrett, "Self-styled militia members planned on storming the U.S. Capitol days in advance of Jan. 6th attack, court documents say," *Washington Post* (Jan. 19, 2021) (repeating inaccurate claim that Caldwell was in the Capitol seeking out Members of Congress).

[12] Caldwell, for example, sent the following message out to both men at 1:44 p.m.:

**Author** Tom Caldwell (Facebook: [number redacted])
**Sent** 2021-01-06 18:44:32 UTC
**Body** You should be here[.]

At 2:54 p.m., one of the men clearly stated that he was "right here in Berryville, Va.," which is a two-hour drive from Washington.  Not only do the Facebook messages clearly show that the men were far away from D.C., undersigned counsel has independently verified that both men were situated in rural Virginia at the time the messages were sent. Neither men have any connection to the Oath Keepers.

announcer, his first-hand account of the events from <u>outside</u> the Capitol, the men sent

four messages between 2:51 p.m. and 3:09 p.m., joking about sealing Members of

Congress in and offered, satirically, directions as to how to navigate the basement of the

Capitol.  The likely reason the Government has quietly removed its incendiary language

from the newest charging document is because it was premised on obvious joking banter,

to which Caldwell <u>never responded</u>.  While tasteless, these <u>private</u>, <u>unsolicited</u> messages

were obviously said in jest <u>by individuals 60 plus miles from the Capitol</u>.[13]  Nonetheless,

as a result of the Government's inaccurate, scare-mongering filing, the Caldwell family

has received threats, and District residents to this day believe that Caldwell and others

were seeking out innocent people in the basement of the Capitol.


### Caldwell's Possession of Firearms Should not Deter the Court from Releasing Him


At Caldwell's first detention hearing, the Government and Court raised concerns

about Caldwell's possession of firearms and ammunition, including a firearm that was

designed to look like a cell phone.  The Court should not be concerned about Caldwell's

access to weapons for several reasons.  First, Caldwell has a pristine record with no

history of violence or misuse of weapons.  In fact, Caldwell once held a top-secret

---

[13] In a similar vein, the Government's reference to a Zello communication among Oath Keepers on January 6th, wherein a male voice can be heard saying, "You are executing a citizen's arrest.  Arrest this assembly, we have probable cause for acts of treason, election fraud," is highly misleading.  The person making this statement, according to the NPR podcast (at time-stamps 7:20 through 7:55), was <u>not</u> in Washington, D.C., but rather was someone "at home cheering them on."  Again, the Government has presented a manifestly inaccurate claim to the Court and public, suggesting that Oath Keepers at the Capitol were executing a citizen's arrest of lawmakers as part of a "plan."

security clearance.  Second, Caldwell's wife, at undersigned counsel's suggestion, has removed all guns and ammunition from their home.  Third, Caldwell never received the "cell phone" gun, which was on back-order.  After his arrest, Mrs. Caldwell canceled the order.

The Court, respectfully, was misinformed about the purpose of the "cell phone" gun.  This gun is a legal firearm under the Gun Control Act, and can be bought like any other firearm.  It is a surprisingly popular gun among individuals, like Caldwell, who have concealed carry permits.[14]  It is colloquially known as the anti-"Karen" gun, a reference to citizens with a predisposition to quickly dial 911 at the drop of a hat.  In other words, the purpose of the gun is to avoid having police unnecessarily called by concerned citizens who are unaccustomed to concealed permit holders (lawfully) carrying a firearm, which is quite common in rural areas like Caldwell's area of residence.  In fact, the inventor of this particular gun has publicly stated that his motivation for creating this firearm stemmed from an incident where hypersensitive citizens freaked out upon noticing his concealed firearm.[15]  In short, Caldwell's "cell phone" gun, which he never

---

[14] According to Professor John R. Lott, president of the Crime Prevention Research Center, who has studied the effects of states allowing concealed carry permits to be issued to the general, law-abiding public, concealed carry permit holders are substantially less likely to commit violent crime than the general population.  Dr. Lott found that the "average male is 7.7 times more likely to get arrested for a violent crime" than the average concealed carry permit holder.  See Dr. John R. Lott, "More Guns, Less Crime," Chap. 10. (University of Chicago Press, 2010).

[15] Joanna Allhands, *Arizona Republic* (reprinted in the *Detroit Free Press*), "What a gun that looks like a cell phone says about us" (March 31, 2016) ("The guy who created it said he did so after a boy spotted his (legal) concealed-carry pistol in a restaurant and everyone freaked out.").

received, is designed to prevent police from having to respond to frivolous 911 calls, which in turn can create both a danger for the police and the permit holder.[16]  Caldwell, if released, will abide by all rules and regulations set forth by the Court, including keeping weapons out of his house.

### The Government's Evidence Tampering Claims are Unsubstantiated

The Government's Facebook "evidence tampering" allegations are, to put it mildly, weak.  Tellingly, the Government made no attempt to rebut Caldwell's lengthy refutation vis-à-vis his innocent behavior in pulling down Facebook photos.  ECF No. 53, Def. Memo., pp. 28-29.  Specifically, the Government did not dispute Caldwell's claim that none of the pictures Caldwell took down from Facebook were from the January 6th rally, id., a fact the Government could have easily debunked.  Since this allegation is one of two specifically listed tampering "acts" in Count 5 of the Indictment, the Government's silence suggests Caldwell is right and the Government's indictment is wrong on this issue.

As to the issue of an "unsent" Facebook message, the Government's allegation of tampering amounts to speculation.  As an initial matter, the Government has never proffered the contents of the purported unsent "video" in question.[17]  Second, Caldwell is

---

[16] By now, the Court is undoubtedly noticing a pattern of hysterical Government claims that, when unpacked, actually show that Caldwell is a law-abiding citizen with great respect for law enforcement and the Rule of Law.

[17] If this video depicted something of substantial evidentiary value, Caldwell is confident that the Government would have trumpeted its contents to the Court.

fairly confident that he never deleted <u>any</u> January 6th-related videos or photos he took from his phone, which means that investigators have access to all of the videos the Government complains about. Third, instead of deleting videos and photos from January 6th, Caldwell actually <u>saved</u> copies to his computer, and subsequently gave the password for that device to the FBI. Fourth, as undersigned counsel previously noted, Facebook Messenger only allows "senders" of messages to "unsend" the messages to third parties for <u>up to 10 minutes</u>, at least according to Facebook, Inc.,[18] two tech blogs,[19] and private testing.[20] Undersigned counsel reviewed Caldwell's Facebook Messenger records in depth. There are literally dozens of messages (over a one month period) that were marked "unsent," many of which <u>predated</u> January 6th, i.e., the date the questioned video

---

[18] Facebook, Inc., *MessengerNews Blog*, Anna Iskikian, Product Manager (Feb. 5, 2019), [https://messengernews.fb.com/2019/02/05/new-messenger-feature-gives-you-ability-to-remove-messages-for-everyone/](https://messengernews.fb.com/2019/02/05/new-messenger-feature-gives-you-ability-to-remove-messages-for-everyone/) ("You will have up to 10 minutes to remove a message after it is sent.").

[19] See, e.g., [https://www.lifewire.com/unsend-facebook-message-4570987](https://www.lifewire.com/unsend-facebook-message-4570987) ("You can unsend a Facebook message up to 10 minutes after sending it."); Pocket-lint (tech blog), Maggie Tillman, *How to Delete a Sent Message on Facebook Messenger*, (Feb. 1, 2021) [https://www.pocket-lint.com/apps/news/facebook/146032-this-is-how-facebook-messenger-s-unsend-feature-looks-and-works](https://www.pocket-lint.com/apps/news/facebook/146032-this-is-how-facebook-messenger-s-unsend-feature-looks-and-works) (noting that Facebook Messenger users have 10 minutes to "unsend" messages to third parties).

[20] Undersigned counsel requested that three associates who are regular Facebook Messenger users test the "unsend" feature on their service by sending messages to third parties and then attempting to "unsend," i.e., recall them, later. All three confirmed that the "unsend" feature only works for about 10 minutes or so after sending the message.

was taken, and didn't involve co-defendants. Accordingly, at a minimum, this suggests that whatever actions Caldwell was taking on Facebook were not specific to January 6th-related videos and photos.

Caldwell is adamant that he never "destroyed" any evidence or did anything to conceal evidence from authorities. The Government recovered every photo and video taken on January 6th from both Caldwell's phone _and_ computer. Why would Caldwell keep (alleged) incriminating information on his phone and then copy it to his computer if he was trying to destroy evidence? The Government has no confession, no admission, and no witnesses to back up their "destruction of evidence" slander, and has yet to tell the Court what the video in question depicts. And after making serial inaccurate representations regarding Caldwell's alleged Oath Keeper membership, his non-existent "leadership role" in that organization, his mythical charge "inside" the Capitol, his alleged "fugitive" from justice status, and Zello and Facebook evidence, the Government now expects the Court to trust its speculation that Caldwell destroyed evidence?[21]

---

[21] The Government, unfortunately, again suggests that Caldwell encouraged co-defendants Crowl and Watkins to avoid law enforcement detection and to hide evidence. Again, discovery materials reveal overwhelming evidence that Crowl and Watkins were "on the run" from the media. Caldwell did not want a media circus at his farm, and encouraged the pair to make sure that the paparazzi were not following them. In fact, Watkins and Crowl were not charged until 3 days after they left their Ohio homes. At her detention hearing, the Court opined that Ms. Watkins was _not_ a flight risk. If Ms. Watkins did not "flee" law enforcement, how can Caldwell be credited with helping her to flee? Finally, discovery proves that neither Watkins nor Crowl brought "battle rattle" or their uniforms to Caldwell's farm.

## **Since He is Neither a Danger nor Flight Risk, Caldwell Requests to be Released**

The Court, now having been more fully informed about the evidence against Caldwell and the defendant's background, has multiple grounds upon which to reconsider and release Caldwell.  First, the Court (and defendant) is now aware of recently disclosed evidence, including Signal chat data and Facebook messages, which not only cast doubt on the strength of the Government's case against Caldwell, but also calls into question whether the alleged conspiracy was a months-long plot, in contradistinction to a spontaneous event.  Second, and related, the Court specifically emphasized Caldwell's lengthy and substantial planning to invade the Capitol—as proffered by the Government—as grounds to detain Caldwell.  The Court now, having been more fully informed, understands that the Government has no concrete evidence to back up its claim of a sophisticated conspiracy that began in November.  Third, the Court now has been fully informed that Caldwell, instead of obstructing justice, fully cooperated with law enforcement, including giving a multi-hour interview with the FBI, signing consent to search forms, and voluntarily turning over his computer password.  Caldwell has also debunked the Government's tampering with evidence claims, and has not been contradicted on his claim that he never destroyed videos or photos.

In closing, the Government has presented its view of the strength of its case against Caldwell.  Respectfully, undersigned counsel has an opinion as well.  In 25 years of criminal law practice, and having represented thousands of clients in state and federal courts (mostly in Maryland), and after having interviewed the Defendant for more than

15 hours and reviewing voluminous discovery, Retired Lt. Commander Thomas E.
Caldwell has been highly truthful in his interactions with the undersigned, his answers to
questions have all "checked out," the evidence that he joined a conspiracy to subvert the
election is thin, and the undersigned has no hesitation in joining in Caldwell's assertion
that, with the possible exception of trespassing, he is innocent of what he's been charged
with.

It is respectfully requested that Caldwell be released on conditions as deemed
appropriate by the Court.

<div style="margin-left:45%;">
_____/s/_____<br>
David W. Fischer, Esq.<br>
Federal Bar No. 023787<br>
Law Offices of Fischer & Putzi, P.A.<br>
Empire Towers, Suite 300<br>
7310 Ritchie Highway<br>
Glen Burnie, MD 21061<br>
(410) 787-0826<br>
fischerandputzi@hotmail.com<br>
Attorney for Defendant
</div>

**<u>CERTIFICATE OF SERVICE</u>**

 I HEREBY CERTIFY that on this 10th day of March, 2021, a copy of the foregoing Defendant's Reply Regarding Reconsideration of Detention Status was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:   Office of the United States Attorney
             555 4th Street, NW
             Washington, DC 20001
             (Attn:  Kathryn Rakoczy, AUSA)

          _____/s/_____
          David W. Fischer, Esq.