## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| vs. | * | Case No.: 21-CR-28-APM |
| THOMAS EDWARD CALDWELL | * | |

\* \* \* \* \* \* \* \* \* \* \*

### Defendant Caldwell's Reply in Support of Motion to Dismiss

In opposing Caldwell's Motion to Dismiss Counts 1 & 2,[1] the Government advances two arguments. First, the Government asserts that the term "official proceeding" as used in Section 1515(a)(1)(B) is textually clear, unambiguous, and was intended to incorporate the non-legal definition of "proceeding." ECF No. 313 at 7-8. Alternatively, the Government claims that if the term "official proceeding" is narrowly construed, applying only to formal hearings, the Electoral College certification constitutes such a "formal  hearing" within the meaning of Section 1512(c)(2). Id. at 8-9. The Government's contentions are without merit.

Caldwell recently unearthed a treasure-trove of relevant legislative history, which has not been raised in any briefing in other Capitol Hill cases, and which is highly

---

[1] Subsequent to filing the instant Motion to Dismiss the Fourth Superseding Indictment, the Government filed a Fifth Superseding Indictment.  ECF No. 328.  As Caldwell is charged with identical crimes in the newest Indictment, the arguments set for in his Motion to Dismiss and the instant Reply are reasserted as to the Fifth Superseding Indictment.

enlightening as to Congress's intent in enacting Sections 1512(c)(2) and 1515(a)(1)(B).[2] To understand what Congress intended by the term "official proceeding," the Court must travel back in time to 1979, a year of disco, high gas prices, and Congress's first attempt to pass what would become Sections 1512 and 1515.

### A.  Congress's attempts in 1979 and 1981 to overhaul Title 18 resolves any mystery as to what was meant by the term "official proceeding."

The origins of Sections 1512 and 1515 lie in Congress's attempt to streamline, simplify, and reorganize the federal criminal code.  Actually, as Georgetown University Law Professor Julie O'Sullivan observed, there is no federal criminal "code," i.e., "a comprehensive, thoughtful, and internally consistent system of criminal law."[3]  Instead, Congress has promulgated "a haphazard grab-bag of statutes accumulated over 200 years[.]"  Id.  In 1979 and 1981, Congress made Herculean attempts to reform and organize Title 18 and a related mishmash of federal criminal statutes.  Although unsuccessful, the proposed bills and Senate reports surrounding Congress's efforts are highly educational as to the issue at hand:  What did Congress intend by using the term "official proceeding" when it passed Sections 1512 and 1515 in 1982?

### 1.  The model for what became Section 1512 is proposed.

In 1979, Senate Judiciary Chairman Ted Kennedy (D-MA) and minority ranking member Sen. Strom Thurmond (R-SC) co-sponsored the Criminal Code Reform Act of

---

[2] As the legislative materials cited in this Reply were difficult to obtain, Caldwell is willing, upon request, to provide the Court and the Government with copies.

[3] Julie O'Sullivan, *The Federal Criminal "Code" is a Disgrace: Obstruction Statutes as Case Study*, 96 J. Crim. L. & Criminology 643, 643-44 (2006).

1979, or Senate Bill 1722 ("S. 1722").[4]  S. 1722 was Congress's first effort to reorganize federal criminal statutes.[5]  Styled as a bill "[t]o codify, revise, and reform title 18 of the United States Code," id., S. 1722 is important to the instant case <u>as it appears to document Congress's first attempt to pass what would later become 18 U.S.C. § 1512</u>, the statute under which Caldwell is charged.  The language of the 1979 bill and the accompanying Senate Judiciary Committee report are, accordingly, informative.

S. 1722 included a proposed a new obstruction of justice statute, § 1323 ("1979 legislation"), which provided:

**§ 1323. Tampering With a Witness, Victim, or an Informant**
(a) OFFENSE.—A person is guilty of an offense if he—
  (1) uses force, threat, intimidation, or deception with intent to—
    (A) influence the testimony of another person in an official proceeding; or
    (B) cause or induce another person to—
       (i) withhold testimony, or withhold a record, document, or other object, from an official proceeding;
       (ii) engage in conduct constituting an offense under section 1325 (Tampering With Physical Evidence);
       (iii) evade legal process summoning him to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
       (iv) absent himself from an official proceeding to which he has been summoned by legal process; or
    (C) hinder, delay, or prevent the communication to a law enforcement officer of information relating to an offense or a possible offense;

  (2) with intent to annoy, harm, or injure another person, hinders, delays, prevents, or dissuades—
    (A) a witness or a victim from attending or testifying in an official proceeding; or

---

[4] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. (1979).
[5] "The Committee strongly believes that the time has come to create, for the first time since the founding of our nation, a systematic, consistent, and comprehensive Federal criminal code to replace the hodgepodge that now exists."  S. Rep. No. 96-553, at 5 (1979).

(B) a witness, victim, or a person acting on behalf of a victim, from—
    (i) making a report of an offense or a possible offense to a judge, a law enforcement officer, a probation officer, or an officer of a correctional facility;
    (ii) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted or assisting in such prosecution or proceeding; or
    (iii) arresting, or causing or seeking the arrest of, a person in connection with an offense; or
 (3) does any other act with intent to influence improperly, or to obstruct or impair, the—
    (A) administration of justice;
    (B) administration of a law under which an official proceeding is being or may be conducted; or
    (C) exercise of a legislative power of inquiry.[6]

That the 1979 legislation set forth above served as <u>the model</u> for what would later become 18 U.S.C. § 1512 is clear for several reasons.   Significantly, the 1979 legislation and Section 1512 have identical titles: "**Tampering with a Witness, Victim, or an Informant**."[7]   Additionally, the 1979 legislation, like Section 1512, makes multiple references to the term "official proceeding."   Significantly, the 1979 legislation, like Section 1512, eliminated the "pending proceeding" requirement.[8]

    The most obvious proof of kinship between the two sections, however, is that <u>every portion of the current Section 1512 is lifted from the 1979 legislation</u>.   Sections

---

[6] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323 (1979).

[7] <u>See</u> Victim and Witness Protection Act of 1982, Pub. L. No. 97-291, § 2, 96 Stat. 1248 (1982).

[8] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323(d)(1) (1979) ("It is not a defense to a prosecution . . . that . . . an official proceeding was not pending or about to be instituted[.]").

1512(b)(1)-(3) and (d)(1)-(4), for instance, which passed as part of the original Section

1512 in 1982, were respectively drawn from the 1979 bill's subsections (a)(1)(A)-(C) and

(a)(2)(A)-(B).  Section 1512(c)(1)'s text, the subject of the Arthur Anderson case, was

copied from a proposed 1979 evidence tampering statute (§ 1325), which is cross-

referenced in the 1979 legislation's subsection (a)(1)(B)(ii).[9]  Section 1512(c)(2), which

was added to Section 1512 as part of Sarbanes-Oxley in 2002, bears a striking

resemblance to the 1979 legislation's "residual clause" found in subsection (a)(3).[10]  In

short, the statutory DNA of Section 1512 traces back to Congress's 1979 failed attempt to

pass a new obstruction of justice statute within the context of a sweeping overhaul of

Title 18.

2. **The "Rosetta Stone" as to the meaning of "official proceeding**."

Unlike Sections 1512 and 1515, the 1979 legislation included a detailed definition

as to what Congress meant when it used the term "official proceeding" in relation to

obstruction of justice.  A veritable "Rosetta Stone," § 111 of the proposed 1979

legislation defined, for purposes of § 1323, the term "official proceeding" as follows:

> 'official proceeding' means a proceeding *convened* pursuant to lawful
> authority, or a portion of such a proceeding, that is or may be *heard* before
> (a) a government branch or agency; or (b) a public servant who is
> *authorized to take oaths*, including a judge, *a chairman or a Member of
> Congress authorized by a legislative committee or subcommittee*, a

---

[9] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1325 (1979).

[10] In addition to Section 1512's subsections (b), (c), and (d), the 1979 legislation included a separate proposed statute, § 1324, which covered acts of witness intimidation, which are now codified in subsection (a) of Section 1512.  Id., § 1324.

bankruptcy judge, an administrative law judge, a hearing examiner, and a notary[.][11]

As used in the 1979 legislation, the term "official proceeding" obviously applied to administrative, judicial, and congressional hearings.  Id.  Instead of routine business, an "official proceeding" was a "proceeding" that was "convened."  Id.  When used in a legal context and as a transitive verb, (i.e., "convene a proceeding"), "convened" or "to convene" means "to summon before a tribunal,"[12] "to order to appear before a court of law, judge, tribunal, etc.,"[13] or "to summon before a court of law."[14]

    An "official proceeding," moreover, was a proceeding "that is or may be heard," i.e., an event that involves a hearing.  More telling, subsection (b) of the 1979 legislation, in the context of Congress, specifically referred to "a chairman" or "Member of Congress" who is "authorized to take oaths" at "legislative committee or subcommittee" hearings.  Id.  In short, the definition of "official proceeding" as used in the template for what would three years later become Sections 1512 and 1515(a)(1)(B), completely validates Caldwell's position, i.e., that Congress intended the term "official proceeding" as used in Section § 1515(a)(1)(B) to be limited to congressional inquiry hearings.

---

[11] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 111 (1979) (emphasis added).

[12] Convene, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2001).

[13] Convene, COLLINS DICTIONARY OF LAW © (W.J. Stewart 2006) (definition used in British English).  The word "convene," interestingly, is derived "from Latin convenīre to assemble, from venīre to come."  Id.

[14] Convene, WEBSTER'S NEW WORLD COLLEGE DICTIONARY (4th ed. 2010) (definition used in American English).

3. **The origins of Section 1512(c)(2), i.e., the "residual clause."**

Caldwell is charged under Section 1512's "residual clause," which makes it a crime to "otherwise obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so[.]"  18 U.S.C. § 1512(c)(2).  Significantly, the 1979 legislation also included a "residual clause," § 1323(a)(3), which declared: "A person is guilty of an offense if he--. . .

> (3) does any other act with intent to influence improperly, or to obstruct or impair, the—
> (A) administration of justice;
> (B) administration of a law under which an official proceeding is being or may be conducted; or
> (C) exercise of a legislative power of inquiry.[15]

The 1979 legislation's "residual clause" targeted obstructive acts aimed at court cases ("administration of justice"), administrative hearings ("administration of law"), and congressional inquiry hearings ("exercise of legislative power of inquiry").  Id.  Section 1512(c)(2), in comparison, targets obstructive acts aimed at "official proceeding[s]," i.e., "a proceeding before a judge," "a proceeding before the Congress," and "a proceeding before a Federal Government agency."  18 U.S.C. § 1515(a)(1)(A)-(C).  Considered in the context of the 1979 legislation's detailed definition of "official proceeding," Congress clearly viewed the term "official proceeding" as synonymous with the proceedings listed in the 1979 legislation's "residual clause."

---

[15] Criminal Code Reform Act of 1979, S.B. 1722, 96th Cong. § 1323(a)(3) (1979).

Section 1512(c)(2) was not added to Section 1512 until 2002 when, without fanfare or legislative history, it was inserted into the massive Sarbanes-Oxley legislation.[16]  A textual comparison of residual clauses, however, demonstrates that Section 1512(c)(2)'s origins lie in the 1979 legislation: ("does any other act" vs. "otherwise"), ("obstruct" vs "obstructs"), ("impair" vs. "impedes"), ("influence improperly" vs. "influences").  The 1979 legislation's "residual clause" was clearly limited to punishing obstructive acts related to Congress's <u>legislative power of inquiry</u>. Logically, Congress possessed a similar intent when it pulled the 1979 residual clause off of the shelf, dusted it off, and quietly inserted it into Sarbanes-Oxley as Section 1512(c)(2).

4.  **<u>In 1981, Congress again attempted to pass the precursor to Section 1512</u>**.

In 1981, Congress again attempted a sweeping overhaul of Title 18 via the Criminal Code Reform Act of 1981 (S. 1630), co-sponsored by Judiciary Committee Chairman Strom Thurmond and ranking member Senator Joseph R. Biden.  Like the 1979 legislation, the 1981 proposal included an identically titled and worded § 1323 ("1981 legislation").[17]  The 1981 legislation, however, included a somewhat broader definition for the term "official proceeding":

> 'official proceeding' means a proceeding or inquiry, including an investigative proceeding or inquiry, convened or instituted pursuant to lawful authority, or a portion of such a proceeding or inquiry, that is or may be heard before or conducted by (a) a government branch or agency, or (b)

---

[16] Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.
[17] Criminal Code Reform Act of 1981, S.B. 1630, 97th Cong. § 1323 (1981).

a public servant who is authorized to take oaths, including a judge, a chairman or a Member of Congress authorized by a legislative committee or subcommittee, a bankruptcy judge, an administrative law judge, a hearing examiner, and a notary[.][18]

The 1981 legislation's definition of "official proceeding" was expanded in two important respects.  First, instead of "proceeding[s]," the term now applied to "a proceeding or inquiry."  As will be documented *infra*, this change suggests that Congress was tracking language from 18 U.S.C. § 1505, which criminalizes obstructive acts aimed at a "proceeding . . . before any department or agency of the United States" or "any inquiry or investigation . . . being had by either House, or any Committee of either House or any joint committee of the Congress[.]"  18 U.S.C. § 1505.  Second, the broader definition now applied to ancillary "investigative proceeding[s] or inquir[ies]," which confirms that the D.C. Circuit's holding in Kelley was correct.  See United States v. Kelley, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (finding that the term "official proceeding" included an Inspector General investigation of AID as the I.G. was empowered to "issue subpoenas and compel sworn testimony in conjunction with an investigation of agency activities.").

A carbon copy of the 1979 legislation in every other respect, the 1981 legislation included an identical "residual clause," which proscribed "any other act with intent to influence improperly, or to obstruct or impair, the (A) administration of justice; (B) administration of a law under which an official proceeding is being or may be conducted;

---

[18] Id., § 111.

or (C) exercise of a legislative power of inquiry."[19]  Once again, Congress intended for the "residual clause" to be limited to congressional inquiry hearings.

5. **Senate Judiciary Committee reports provide fuller context**.

The 1981 Senate Judiciary Committee report, importantly, extensively detailed Congress's intent behind the "residual clause" in the 1981 legislation:

> Subsection (a)(3) [(the residual clause)] provides that a person is guilty of an offense if he "does any other act with intent to influence improperly, or to obstruct or impair," the administration of justice, the administration of law under which an official proceeding is being conducted, or the exercise of a legislative power of inquiry.
>
> *This provision is derived from the general residual clause at the end of 18 U.S.C. 1503 and 1505*[.][20]

Congress was quite explicit:  The "residual clause" in the 1981 legislation was <u>derived</u> from the residual clauses in §§ 1503 and 1505.  The Senate report highlighted that the "residual clause" was intended to proscribe "rare" types of obstructive conduct:

> In the Committee's view . . . *the purpose of preventing an obstruction or miscarriage of justice* cannot fully be carried out by a simple enumeration of the commonly prosecuted obstruction offenses.  There must also be protection *against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice*.[21]

Notably, the residual clause was designed to punish conduct intended to "thwart[] justice."  Congress intended, moreover, that the "residual clause" reach unique fact-patterns involving obstructive conduct by those with "inventive criminal mind[s]," and

---

[19] <u>Id</u>., § 1323(a)(3).
[20] S. Rep. No. 97-307, at 351-52 (1981) (emphasis added).
[21] <u>Id</u>. (emphasis added).

highlighted several examples in its report.[22]  The Senate report further recommended that courts interpret the residual clause "to cover conduct the function of which is to tamper with a witness, victim, or informant in order to *frustrate the ends of justice*."[23]

While neither the 1979 nor 1981 legislation became law, these bills obviously served as the model for Section 1512.  These unpassed bills had unanimous, bipartisan support in the Senate Judiciary Committee.[24]  Significantly, the 1981 Senate report excerpts quoted above were <u>copied</u> verbatim from the original 1979 Senate Judiciary report regarding § 1323, which was authored by the Chief Counsel to the Senate Judiciary Committee, Stephen Breyer.[25]

6.  **Congress finally passes Section 1512 in 1982**.

In 1982, after changes were made through the legislative process, Section 1512 was enacted into law as "The Victim and Witness Protection Act of 1982."  The original Senate version of this bill, S. 2420, eliminated the explanatory definition of "official proceeding" included in the 1979 and 1981 legislation in favor of the current definition as

---

[22] The Senate report cited exotic scenarios not covered by §§ 1503 and 1505, such as a criminal defendant who had "an unnecessary abdominal operation" to cause a mistrial, a con artist who plied an "illiterate estate administrator with liquor" in order to obtain documents to use to dismiss a civil suit, and a defendant who attempted to discredit a witness by planting "an illegal bottle of liquor" at the witness's home.  <u>Id</u>. at 352-53.

[23] <u>Id</u>. at 353 (emphasis added).

[24] The 1979 and 1981 bills were sponsored by a diverse and respected bipartisan cross-section of the Senate, including Senators Kennedy, Thurmond, Biden, Hatch, Dole, DeConcini, Laxalt, East, Denton, and Specter.

[25] S. Rep. No. 96-553, at 327-331 (1979).

set forth in Section 1515.  The proposed Senate bill also—again--included a "residual

clause":

> Whoever--. . .
>     3) with intent corruptly, or by threats of force, or by any threatening
> letter or communication, influences, obstructs, impedes, or attempts to
> corruptly, or by threats of force, or by threatening letter or communications.
> influences, obstructs, impedes the—
> (A) enforcement and prosecution of federal law:
> (B) administration of a law under which an official proceeding is being or
> may be conducted; or
> (C) exercise of a Federal legislative power of inquiry, shall be punished as
> provided in subsection (b).[26]

The 1982 Senate report accompanying S. 2420 reiterated that its proposed "residual

clause" was derived from Sections 1503 and 1505:

> Subsection (a) (3) . . .  refer[s] to the "enforcement and prosecution of
> federal law" [and] is designed to carry forward the basic coverage in 18
> U.S.C. 1503. The *latter two branches of the subsection*, referring to the
> "administration of a law under which an official proceeding is being
> conducted" and to the "exercise of a legislative power of inquiry," *are
> designed to continue the general scope of the final paragraphs of 18 U.S.C.
> 1505*.[27]

7. **Legislative history strongly supports Caldwell's position**.

Three conclusions can be drawn from analyzing the legislative history derived

from the 1979, 1981, and 1982 bills and reports.  First, the term "official proceeding,"

defined in detail in the 1979 and 1981 bills, was intended by Congress to apply to

judicial, administrative, and congressional hearings and their ancillary investigations.

---

[26] The Omnibus Victims Protection Act of 1982, S.B. 2420, 97th Cong. § 1512(a)(3).
[27] S. Rep. No. 97-532, at 18-19 (1982) (emphasis added).

Second, Congress, in three different iterations of the precursor to Section 1512(c)(2), clearly intended the "residual clause" to, in the words of the 1982 Senate report, "carry forward the basic coverage" of Sections 1503 and 1505.[28]  Third, Congress intended the "residual clause" to be "broad," but only in the sense that it would reach unique criminal obstruction scenarios that were designed to "thwart," "frustrate," or cause a "miscarriage" of "justice."[29]

Finally, and most telling, not one iota of the unpassed, proposed bills that were the model for Sections 1512 and 1515, nor three detailed Senate Judiciary Committee reports, support the Government's position that Section 1512(c)(2) was intended to apply to the act of obstructing Congress outside of the context of inquiry hearings and related ancillary investigations.

8. **The Government's claim that legislative history supports its position is without merit**.

The Government claims that legislative history surrounding the passage of Section 1512 "underscores that Congress intended 'official proceeding' to reach" the Electoral College certification.  ECF No. 313 at 17.  Demonstrating that beauty is truly in the eye of the beholder, the Government joins Caldwell in citing comparable language from the Senate's 1982 report to support its position:

> But the Senate Judiciary Committee report that supported [Section 1512]
> justified the inclusion of a "broad residual clause" . . . by noting that the
> 'purpose of preventing an obstruction or miscarriage of justice cannot be
> fully carried out by a simple enumeration of the commonly prosecuted

---

[28] Id. at 19.
[29] S. Rep. No. 97-307, at 352-53 (1981).

> obstruction offenses.  There must be also be protection against the rare type
> of conduct that is the product of the inventive criminal mind and which also
> thwarts justice.'  S. Rep. 97-532, at 18 (1982).

ECF No. 313 at 17.  To the Government, Congress's documented intent to prevent a

"miscarriage of justice" and punish those who seek to "thwart justice" is proof positive

that the "criminal actions [of Caldwell and Oath Keepers] fit squarely within the

legislative history of the statute," which covers the "inva[sion of] the Capitol to prevent

Congress from physically meeting to perform its constitutional function[.]"  Id. at 17-18.

By contrast, Caldwell posits that Congress's use of terms like "miscarriage of

justice" and "thwart justice" in declaring its understanding of the residual clause's reach

is damning evidence that Section 1512(c)(2) was aimed only at attacks on the legal and

administrative justice system, and congressional inquiries.  Respectfully, the Government

misses the point.  On January 6th, sworn testimony was not being taken, witnesses were

not summoned, and documents were not subpoenaed.  In short, Congress was not

remotely engaged in any activity that could fairly be described as justice-related.

9.  **The DOJ Prosecution Manual is *in simpatico* with legislative history**.

The DOJ *Criminal Resource Manual* ("DOJ Manual"), in describing Congress's

intent behind Sections 1512 and 1515, essentially parrots the Senate Judiciary Committee

reports quoted *supra*.  Both the DOJ Manual and committee reports agree that Section 1512

was "designed to carry forward the basic coverage" of Sections 1503 and 1505, while

ending the "pending proceeding" requirement that was judicially-read into those

provisions.[30]   Additionally, both the DOJ Manual and Senate reports agree that Section 1512 was aimed at proscribing conduct intended to "illegitimately affect the presentation of evidence . . . [in] proceedings before Congress[.]"[31]

Instead of embracing the remarkably accurate assessment of Congress's intent contained in the DOJ Manual, the Government attempts to distance itself.  The Government asserts two objections: 1) that the DOJ Manual hasn't been updated since 1997; and, 2) that Section 1512(c)(2) was passed in 2002, five years after this last update. ECF No. 313 at 12-13.  The Government's first point of contention, ironically, helps Caldwell.  That the lawyers who wrote the DOJ Manual did so closer in time to the passage of Sections 1512 and 1515 would seem to bolster their legal opinion as to the statute's reach.[32]  The Government's protest about Section 1512(c)(2) being passed in 2002 is also meritless, as that statutory addition did not change the definition of "official proceeding," which was passed in the 1982 bill as Section 1515(a)(1)(B).

10. **At a minimum, Section 1512(c)(2) is ambiguous**.

---

[30] Compare S. Rep. No. 97-532, at 19 (1982) with DOJ *Resource Manual*, § 1729, https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or ("This definition [of 'proceeding' in § 1512] is in large part a restatement of the judicial interpretation of the word 'proceeding' in §§ 1503 and 1505.").

[31] DOJ Resource Manual, § 1729, https://www.justice.gov/archives/jm/criminal-resource-manual-1729-protection-government-processes-tampering-victims-witnesses-or.  See also S. Rep. No. 97-532, at 16-19.

[32] The Government indicates that the DOJ Manual language cited by Caldwell was last updated in 1997.  It is unknown, however, as to what year the passages cited by Caldwell were included in the DOJ Manual.

Caldwell's larger point about the DOJ Manual is simple:  If the DOJ, for at least the last 24 years, has essentially taken Caldwell's position as to the meaning of "official proceeding," how can the Government, with a straight-face, now argue that Sections 1512 and 1515 are "clear and unambiguous"?  To accept the Government's position that the term "official proceeding" unambiguously applies to the Electoral College certification, the Court must disregard several logical roadblocks.

First, as previously noted, the DOJ for at least a quarter century has interpreted these "unambiguous" statutes differently.  Second, and related, the Government has acknowledged in other J6 cases that Section 1512(c)(2) has never been used to prosecute anyone who interrupted Congressional business.  Third, multiple courts, including Ramos[33] (Fifth Circuit) and Ermoian[34] (9th Cir.), have read Sections 1512 and 1515 to unambiguously favor Caldwell's interpretation.  Fourth, in addition to Ramos and Ermoian, every court that has interpreted the term "official proceeding," including Binette,[35] Perez,[36] and Kelley,[37] have issued rulings that presuppose that the word

---

[33] United States v. Ramos, 537 F.3d 439, 462 (5th Cir. 2008).

[34] United States v. Ermoian, 727 F.3d 894, 901 (9th Cir. 2013) (finding that "official proceeding" refers to "some formal hearing before a tribunal[.]").

[35] United States v. Binette, 828 F. Supp. 2d 402, 403-404 (D. Mass. 2011) (holding that a preliminary SEC investigation did not constitute an "official proceeding" under Section 1512 as compelled sworn testimony and subpoena powers had not taken effect).

[36] United States v. Perez, 575 F.3d 164, 169 (2nd Cir. 2009) (holding that a BOP review panel, which made determinations, findings, and final decisions, constituted an "official proceeding").

[37] United States v. Kelley, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a formal investigation opened by the Office of the Inspector General of AID was an "official proceeding.").

"proceeding" is used in the legal—not lay—sense and pertains to hearings before judicial or quasi-judicial bodies, or the ancillary actions of investigators acting as the arm of such bodies.  Fifth, federal laws already exist that cover the very conduct Caldwell and his co-defendants are accused of, including 18 U.S.C. § 231(a)(3) (interference with a "federally protected function") and 40 U.S.C. § 5104(e)(2)(c) (disrupting "official business" in the Capitol).

The Government's reading of Sections 1512 and 1515, moreover, is inconsistent with the title of the statute, "**Tampering with a witness, victim, or an informant**," which strongly suggests that the law prohibits acts which "thwart justice."  Nor does the Government's reading comport with Section 1512(c)(2)'s quiet inclusion in Sarbanes-Oxley, a bill aimed at restoring confidence in the financial sector, under the subtitle: "Tampering with a record or otherwise impeding an official proceeding."[38]  The Supreme Court looked at similar "cues" in holding that a Sarbanes-Oxley anti-shredding statute, Section 1519, did not apply to fishermen deep-sixing their catch.  <u>Yates v. United States</u>, 574 U.S. 528, 545-46 (2015) (observing that the title of § 1519, "Destruction, alteration, or falsification of records in Federal investigations and bankruptcy," conveyed "no suggestion that [§ 1519] prohibits spoliation of any and all physical evidence[.]").[39]

11. **<u>The Electoral College certification was not an "official proceeding</u>**."

---

[38] Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, Title XI.
[39] Along with this "cue[]," <u>Yates</u> observed that Section 1519 was passed as part of Sarbanes-Oxley, which was aimed at financial fraud, thus making it unlikely that Congress intended a broad reading of the statute.  <u>Id</u>. at 546.

The text, structure, legislative history, and judicial interpretation all confirm that Congress's intent in passing Section 1512 was to criminalize obstructive conduct intended to illegitimately affect the presentation of evidence before courts, administrative hearings, and congressional inquiry hearings, while also eliminating the "pending proceeding" requirement under Sections 1503 and 1505.  In enacting Section 1512(c)(2), Congress tracked the language and intent behind Sections 1503 and 1505, and explicitly documented in multiple Senate reports that the "residual clause" was intended to incorporate those provisions.  And as the Government acknowledges, Section 1505 only applies "to congressional investigations."  ECF No. 313 at 10.  Moreover, as the bills and reports cited from 1979 and 1981 illustrate, the term "official proceeding," in the context of Congress, was clearly limited to congressional inquiry hearings.  Finally, while undoubtedly a solemn occasion, the Electoral College certification was clearly not an "investigation" or "inquiry" by Congress.  Respectfully, Counts 1 and 2 must be dismissed.

## B. **The Government has corrected duplicitous Count Nine**.

In his Motion to Dismiss, Caldwell moved for the dismissal of Count Nine of the Fourth Superseding Indictment, which charged him with evidence tampering pursuant to 18 U.S.C. § 1512(c)(1), on the grounds of duplicity.  ECF No. 240 at 15-17.  Recognizing its charging flaw, the Government's Fifth Superseding Indictment eliminated the duplicitous language in what is now Count Ten.  ECF No. 328, ¶198.  Accordingly, Caldwell sets forth no additional arguments as to this count.

18

C. **Count Four must be dismissed**.

Caldwell moved for dismissal of Count Four, which charged a violation of 18 U.S.C. § 1752(a)(1), on the grounds that the Indictment failed to state an offense.  ECF No. 240 at 18.  Respectfully, the Government's counter-arguments are without merit.

1. **The Capitol "building" is not the same as the Capitol "grounds.**"

The Government is incorrect when it asserts that "[t]he Capitol Grounds *include* the Capitol Building."  ECF No. 313 at 35.  Title 40 of the United States Code ("Public Buildings, Property, and Works") distinguishes between "Capitol Buildings," which include structures "and the real property underlying *and* enclosed by any of these structures," 40 U.S.C. § 5101 (emphasis added), and "Capitol Grounds," which include "the grounds encompass[ing] 295 acres of landscape and infrastructure across Capitol Hill, including Union Square . . . and the National Mall.[40]  Criminal statutes within Title 40, moreover, repeatedly distinguish between Capitol "buildings" and "grounds" when proscribing weapons, illegal entry, and disorderly conduct offenses.  See, e.g., 40 U.S.C. § 5104(e)(2)(D) (criminalizing disorderly conduct "at any place in the Grounds or in any of the Capitol Buildings[.]").

2. **The Government must prove contemporaneous occupancy**.

---

[40] https://www.aoc.gov/about-us/organizational-structure/office-chief-operations/capitol-grounds-arboretum-jurisdiction. (Architect of Capitol website).

The Government disputes that Count Four should be dismissed because "[Caldwell] and the Vice-President were not contemporaneously in the same place." ECF No. 313 at 35. The Government correctly notes that a "restricted area" can include sites of future Secret Service protectee visits, i.e., areas "where [the Vice President] is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B) (emphasis added). Count Four, however, does not allege a future visit of the Vice-President. Instead, the Grand Jury specifically alleged that Caldwell's trespass was contemporaneous: "the defendants . . . did knowingly enter and remain in a restricted building or grounds . . . within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting[.]" ECF No. 328, ¶183 (emphasis added). Count Four's phrasing connotes contemporaneous occupancy of the restricted area, not a trespass into an area where the Vice President "will be" visiting. 18 U.S.C. § 1752(c)(1)(B).

Accordingly, as the Capitol Building is not the same as the Capitol Grounds, and Caldwell never entered the Capitol Building, ECF No. 328, ¶156, Count Four requires the Government to prove that Caldwell occupied the Capitol Grounds contemporaneously with the Vice President or Vice President-elect while it was restricted. The Indictment, by its terms, proves that Caldwell was never inside the Capitol, while the Vice-President was inside the Capitol before Caldwell arrived, and did not leave until late in the evening. ECF No. 328, ¶¶6-9.

Additionally, contrary to the Government's claim, it is insufficient to allege that the Capitol Grounds were "restricted" on J6. As the indictment confirms, the Capitol is

"restricted" every day of the year.  ECF No. 328, ¶5 ("The Capitol is secured 24 hours a day" by the Capitol Police who "maintain permanent and temporary barriers to restrict access to the Capitol exterior[.]").  McDonalds, Wal-Mart, and private residences are also "restricted."  These areas, like the Capitol, however, are not "restricted" for purposes of Section 1752 unless an authorized agency orders the areas to be restricted based on a planned or current visit by a Secret Service protectee.  As such, the issue is whether the Secret Service requested that the Capitol Grounds be "restricted" for the purpose of Vice-President Pence's visit.  The answer to that question, implicit in the Government's multi-page briefing, appears to be "no."  Accordingly, Count Four must be dismissed.

3.  **The Secret Service must restrict the area**.

The Government cites a recent District Court opinion, United States v. Griffin, No. 21-cr-00092-TNM, ECF No. 41, 2021 LEXIS 123952, at *1 (D.D.C. Jul. 2, 2021) (McFadden, J.), to counter Caldwell's claim that the Secret Service must create the "restricted area."  Respectfully, the Griffin opinion is flawed.  Section 1752 defines "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area."  18 U.S.C. § 1752(c)(1).  The Griffin Court conceded that the "relevant phrase" in Section 1752 "appears in the passive voice" and "that someone must do the physical posting, cordoning off, or restricting."  Griffin at 7.  The Griffin Court, however, determined that the open-ended phrasing of the statute "[did] not mean any word or phrase is ambiguous."  Id.  Noting that Section 1752 "says nothing about who must do

the restricting," the <u>Griffin</u> Court refused to "read in . . . a limitation . . . not required by the text," i.e., that the Secret Service was in charge of creating restricted areas.  <u>Id</u>. at 10.

The flaws in <u>Griffin</u> are obvious.  First, while hesitant to "read into" Section 1752 a requirement that the Secret Service do the "restricting," <u>Griffin</u> actually "read into" the statute a "limitation . . . not required by the text," <u>id</u>. at 10, i.e., that virtually anybody can do the restricting, as the "plain text" is not limited to law enforcement agencies.  <u>Griffin</u> asserts that a pure textual reading provides flexibility to law enforcement in protecting public officials.  <u>Id</u>. at 11.  In reality, the <u>Griffin</u> Court's interpretation would lead to uncertainty among law enforcement agencies and civilians alike.  For example, the Mayor of Omaha, upset at the President, could direct his police department to order the entire city of Omaha "restricted" so that supporters of the President stay away.  And what if the Omaha Police Department and the Nebraska State Police disagree as to what is a restricted zone?  Which agency's order should citizens obey?

As Caldwell previously noted, the Secret Service has interpreted Section 1752 (unambiguously) to mean that it has plenary power to assert jurisdiction to restrict areas on behalf of its protectees.  <u>ECF</u> No. 240 at 22 (citing a routinely posted notice by the Secret Service, which states:  "UNITED STATES SECRET SERVICE RESTRICTED AREA—This area is under the jurisdiction of the U.S. Secret Service.  You are entering a 'Restricted Building or Grounds.'").  Section 1752 presupposes that the Secret Service restricts the area.  In fact, if the Secret Service was eliminated by Congress tomorrow, there could be no "restricted areas," as there would be no Secret Service "protectees."

A common sense reading of Section 1752 is that the Secret Service, which is charged with protecting public officials, is the sole agency in charge of restricting certain areas for security reasons.  The Secret Service is the only law enforcement agency mentioned in the statute.  18 U.S.C. § 1752(c)(2).  Significantly, the Secret Service is the only agency tasked with protecting the public officials for whom restricted areas are created.  18 U.S.C. § 3056.  That agency, moreover, is best positioned to anticipate the geographical restrictions necessary to meet its security obligations, and can certainly coordinate with local law enforcement to determine appropriate "restricted zones." Finally, as noted above, the Secret Service has understandably been working under the assumption that it has plenary power to assert jurisdiction and restrict areas as part of its duties.

As such, to prevail on Count Four, the Government must prove that the Secret Service specifically restricted the Capitol Grounds.  The Government could have dispensed with Caldwell's argument by simply stating that "the Government has proof that the Secret Service specifically restricted the Capitol Building and Grounds on January 6th."  Since the Government apparently has no such evidence, the Motion to Dismiss must be granted as to Count Four.

## Conclusion

For the foregoing reasons, the Defendant requests that all charges in the Fifth Superseding Indictment against him be dismissed with prejudice.

Respectfully Submitted,


_____/s/_____
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2021, a copy of this Reply was filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:        Jeffrey Nestler, AUSA
                                   Office of the United States Attorney
                                   555 4th Street, NW
                                   Washington, DC 20001


                                   _____/s/_____
                                   David W. Fischer, Esq.