**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES | * |
| vs. | *   Case No.: 21-CR-28-APM |
| THOMAS EDWARD CALDWELL | * |

\* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S REPLY TO GOVERNMENT'S SUPPLEMENTAL BRIEF
ON 18 U.S.C. § 1512(c)(2)**

## INTRODUCTION

The Government, in response to the Court's request, filed a supplemental brief advancing arguments in support of its position that 18 U.S.C. § 1512(c)(2) applies to the alleged conduct by Caldwell and his co-defendants on January 6, 2021. ECF No. 437. As other defendants will be filing separate responses addressing specific topics, the instant Reply is limited to a narrow set of issues Caldwell believes are important for the Court's consideration and which are not redundant with the filings of co-defendants. The Government's contentions, as argued herein, are without merit. As such, Caldwell requests that this Honorable Court grant his Motion to Dismiss as to Counts 1 and 2 of the Fifth Superseding Indictment. ECF No. 240.

## ARGUMENT

**I.   By using the term "otherwise" in § 1512(c), Congress intended for connectivity between subsections (c)(1) and (c)(2).**

1

In 2002, Congress, through Section 1102 of the Sarbanes-Oxley Act of 2002, passed the "Tampering with a record or otherwise impeding an official proceeding" provision, which was codified and added to 18 U.S.C. § 1512 as subsection (c). As enacted, § 1512(c) applies to:

> (c) Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.

18 U.S.C. § 1512(c). The issue in the instant case is whether subsections (c)(1) and (c)(2) are separate, independent provisions or, instead, interconnected and, if so, to what extent the latter clause is limited by the former clause. As argued infra, these subsections should be read in conjunction with each other, thus limiting the reach of (c)(2) to similar, but unenumerated, conduct as that set forth in (c)(1).

### A. Section 1512's text confirms that "otherwise" connects (c)(1) & (2)

Congress's use of the word "otherwise" in § 1512(c) strongly suggests that it intended connectivity between subsection (c)(2) and (c)(1). If Congress intended for these subsections to be unconnected, it would not have included "otherwise" in (c)(2), thus making the classic disjunctive term "or" the demarcation line in the statute. In fact, the disjunctive word "or" is used throughout other provisions in § 1512, clearly for the purpose of differentiating conduct proscribed in separate

2

subsections.  See, e.g., 18 U.S.C. § 1512(a)(1)(B), (a)(2)(B)(iii), (a)(3)(B)(i), & (b)(2)(B).  *A fortiori*, that Congress used the word "or" by itself between subsections throughout § 1512, but switched to "or . . . otherwise" in § 1512(c), is compelling evidence that connectivity between subsections (c)(1) and (c)(2) was intended.

When read independently, moreover, § 1512(c)(2) makes no sense: "Whoever corruptly . . . otherwise obstructs . . . ."  This clumsily worded proposed reading of the statute demonstrates that Congress did not intend for subsection (c)(2) to be read separate and apart from subsection (c)(1).  Without surrounding text, the "crime" of "otherwise obstructing" would be undefinable and likely constitutionally unenforceable.  By contrast, a more natural reading of § 1512(c) is one that ties the two subsections together, with (c)(2) serving as a catch-all provision in relation to (c)(1).  Finally, the inclusion of the word "otherwise," which is *not used elsewhere* in § 1512, only makes sense when subsections (c)(1) and (c)(2) are understood as connected provisions.

### B. The Supreme Court has ruled that "otherwise" connects clauses

That the use of "otherwise" in a criminal statute connects seemingly independent clauses has also been confirmed by the U.S. Supreme Court.  In Begay v. United States, the Supreme Court recognized that Congress's use of the

word "otherwise" in a penal statute suggested a connectivity between clauses separated by that word. Begay, 553 U.S. 137, 143-44 (2008). In a 6-3 decision, the Begay Court held that a defendant's prior DWI convictions did not qualify as "violent felonies" because they varied in substance from the "violent felony" examples enumerated in the Armed Career Criminal Act ("ACCA").

Relevant to the instant case, the Court examined the ACCA's "catch-all" or "otherwise clause," which defined a "violent felony" as any crime, punishable by imprisonment for a term exceeding one year, which "is burglary, arson, or extortion, involves use of explosives, *or otherwise* involves conduct that presents a serious potential risk of physical injury to another." Id. at 141 (quoting the ACCA) (emphasis added). The Government argued that the ACCA's "otherwise clause" must be read separately and independently of the first clause, essentially covering every crime that "presents a serious potential risk of physical injury to another." Id. at 142. The Court disagreed, however, ruling that the "otherwise clause" of the ACCA limited predicate "violent felonies" to "crimes that are roughly similar, in kind as well as degree of risk posed," to the enumerated "examples themselves." Id. at 143.

In short, a 6-3 majority of the Court found that the term "otherwise" created connectivity between the two clauses, with the "otherwise" clause being reined in by the enumerated crimes listed in the statute's opening clause. Additionally, in

his concurring opinion, Justice Scalia, while disagreeing as to the specific relationship between the two clauses of the ACCA, also opined that the term "otherwise" resulted in a "substantive connection" between the first clause and the "otherwise clause." Id. at 151 (Scalia, J. concurring).[1] The Begay decision strongly support's Caldwell's position that subsections (c)(1) and (c)(2) of § 1512 should be read as connected provisions.

### C. The prescribed penalty for violating § 1512(c)(2) suggests connectivity

A broad interpretation of Section 1512(c)(2) is in conflict with the statute's penalty provision. Section 1512(c)(2), like subsection (c)(1), carries a maximum penalty of 20 years of incarceration. 18 U.S.C. § 1512(c). The broad reading advanced by the Government, however, results in § 1512(c)(2) overlapping every obstruction of justice statute in the United States Code, including statutes that clearly lay out specific, enumerated acts of obstruction, but which carry lighter

---

[1] In addition to finding that the word "otherwise" created connectivity between statutory clauses, the Begay Court also looked at other textual clues, which are pertinent to the instant case, before deciding to limit the reach of the ACCA. First, the Court focused on the statute's title—the Armed Career Criminal Act—in reaching its conclusion that the ACCA "focuses upon a special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." Id. at 146. Second, the Court noted a number of anomalous results that would result based on the Government's broad reading of the ACCA, including applying the ACCA's 15-year mandatory minimum to non-violent convicts who were "reckless polluters," "seamen whose inattention to duty causes serious accidents," and "sewer system" polluters. Id. at 146-47.

penalties. Such a reading would more harshly punish defendants charged under the vaguely worded § 1512(c)(2)'s "otherwise obstructs" language than those charged under clearly enumerated statutes such as § 1505 ("Obstruction of proceedings before departments, agencies, and committees"), which carries a maximum penalty of 5 years of imprisonment. 18 U.S.C. § 1505. The Government's all-encompassing interpretation of § 1512(c)(2), moreover, effectively raises the maximum penalty bar for federal obstruction of justice offenses, all of which are more precisely worded and targeted to specified conduct, to 20 years of imprisonment, a potential penalty only limited by prosecutorial discretion. Respectfully, providing prosecutors with a 20-year hammer to prosecute all obstructive acts, no matter how trivial, under an open-ended statute, was certainly not intended by Congress.

Congress's intent that § 1512(c) be read as one connected provision can logically be deduced from the identical maximum penalties prescribed for violations of subsections (c)(1) and (c)(2) of that statute. Under both the Government's and Caldwell's interpretation, subsection (c)(2), at a minimum, outlaws all conduct enumerated in subsection (c)(1). Both provisions carry a maximum penalty of 20 years of imprisonment. 18 U.S.C. § 1512(c). Read independently of each other, however, these statutes *require different elements of proof*. As the Government emphasized during oral arguments, "(c)(1) has an

additional and separate *mens rea* requirement[,] which is an intent to impair the availability of a document for the proceeding[, while] (c)(2) does not have that separate *mens rea* requirement."  (Transcript at 50).

That subsections (c)(1) and (c)(2) both carry identical 20-year maximum penalties when read independently, but require different elements of proof, is problematic.  That is, the harsh 20-year maximum penalty under § 1512(c)(2), per the Government, applies to a provision with no clear scienter requirement besides the vague word "corruptly," and which does not, unlike subsection (c)(1), require proof of a specific intent to "impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1).  Typically, there is proportionality between an offender's punishment and their requisite intent and actions in violating the law.  In other words, the higher the bar for the Government to prove its case by demonstrating that the defendant intended outcomes required by the statute, the harsher the punishment.  See J. KAPLAN ET AL., CRIMINAL LAW CASES AND MATERIALS 181-83 (4th ed. 2000).  The Government's interpretation flips traditional notions of crime and punishment on its head.

Most problematic for the Government's interpretation is the obvious question:  Why would any prosecutor charge under § 1512(c)(1), when § 1512(c)(2) proscribes, at a minimum, the same conduct, carries an identical maximum penalty and, under the Government's broad reading, *requires one less*

*element of proof*?  The Government's claim that (c)(2) should be read independently effective renders "superfluous" subsection (c)(1) and thus violates the statutory interpretation canon against surplusage.  See Yates v. United States, 574 U.S. 528, 543 (2015) ("We resist a reading of § 1519 that would render superfluous an entire provision passed in proximity as a part of the same Act."); see also Marx v. General Revenue Corp., 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").  A more logical reading of § 1512 is that the statutory element of a specific intent to "impair the object's integrity or availability for use in an official proceeding" applies to both subsections of the statute.

D. **Section § 1512(c)(2) requires a nexus to conduct enumerated in (c)(1)**

As § 1512(c)(1) and (2) are clearly connected, with (c)(2) acting as a catch-all provision, a reasonable interpretation of the latter provision is that it covers all conduct enumerated in (c)(1), as well as all similar conduct not enumerated.  A contextual reading of § 1512 supports this interpretation.  Every provision of 18 U.S.C. § 1512 (as a whole) deals with punishing those who deliberately deprive courts, administrative judges, and Congress of accurate information (witness testimony and documents) and physical evidence.  Section 1512 is saturated with provisions proscribing tampering with witnesses, documents, and physical

evidence, and § 1512(c)(1) specifically prohibits a broad range of document destruction. 18 U.S.C. § 1512(c)(1). Accordingly, in context, (c)(2) requires conduct that has a nexus to documentary or physical evidence intended for use in "official proceedings," i.e., congressional inquiry hearings, court proceedings, and administrative hearings.[2] The Government's far-reaching interpretation of § 1512(c)(2), by contrast, would require the logical leap that Congress intended to transform an exclusively evidence and witness tampering statute into a disorderly conduct or parading in Congress statute.

## CONCLUSION

Caldwell respectfully requests that the Court grant his Motion to Dismiss as to Counts 1 and 2 of the Fifth Superseding Indictment on the grounds previously argued, and based on the additional briefing set forth above.

---

[2] At oral arguments, the Court expressed skepticism regarding Caldwell's argument that Congress's Electoral College certification did not constitute an "official proceeding" under 18 U.S.C. § 1515. Additionally, the Court expressed skepticism as to the Government's interpretation of § 1512(c)(2), as that provision is located within a statute that entirely pertains to "evidence tampering." Caldwell requests that the Court reconsider his arguments regarding the definition of "official proceeding." Logically, since the term "official proceeding" is tied to § 1512, which the Court has acknowledged deals almost entirely with evidence tampering, it would seem that to be an "official proceeding," the "proceeding" must be a forum that takes sworn testimony, subpoenas documents, etc. In relation to Congress, the evidence-gathering proceedings are (the very common) congressional inquiry hearings and, on rare occasions, impeachment proceedings.

                                                  Respectfully Submitted,

                                                  _____/s/_____
                                                  David W. Fischer, Esq.
                                                  Federal Bar No. 023787
                                                  Law Offices of Fischer & Putzi, P.A.
                                                  Empire Towers, Suite 300
                                                  7310 Ritchie Highway
                                                  Glen Burnie, MD 21061
                                                  (410) 787-0826
                                                  Attorney for Defendant

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 12th day of October, 2021, a copy of this Reply was filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:        Jeffrey Nestler, AUSA
                                                 Office of the United States Attorney
                                                 555 4th Street, NW
                                                 Washington, DC 20001

                                                 _____/s/_____
                                                 David W. Fischer, Esq.