IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No.    1:21-cr-28-1 (APM) |
| v. | ) | |
| | ) | |
| | ) | |
| THOMAS CALDWELL | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT THOMAS CALDWELL'S
REQUEST TO MODIFY CONDITIONS OF RELEASE**

The United States respectfully opposes, in part, Defendant Thomas Caldwell's request to modify conditions of release (ECF No. 505). Defendant Caldwell is charged with conspiring with nearly twenty other charged defendants and other uncharged individuals to obstruct the United States Congress's certification of a presidential election. The indictment alleges that Caldwell helped to organize the individuals who were on standby with guns in a hotel across the river, conduct that this Court has described as among the most concerning aspects of the conspiracy. Under these circumstances, confinement to his property, with permission to leave for religious services and medical appointments, is a completely reasonable and essential level of restrictiveness to ensure the safety of the community, and the government opposes a relaxing of that restriction. The government does not, however, oppose a modification of Defendant Caldwell's conditions to allow him to utilize the Internet *solely* for the review of discovery materials and communications with counsel in this case.

1.      The Court is well familiar with the facts of this case and the arguments previously submitted by the government in contending that Defendant Caldwell should be detained and then opposing an earlier request to modify his conditions of release, *see* ECF Nos. 18, 66, and 203.  The government incorporates those arguments to support its opposition here.

2.      The government continues to have grave concerns about the fact that Defendant

Caldwell is on release in the community. For example, at the hearing held by this Court on

February 12, 2021, on the defendant's motion to reconsider his detention, the government

proffered evidence regarding a gun designed to look like a cell phone that Defendant Caldwell

tried to purchase in late November 2020. The government recently obtained records regarding this

purchase, attached as Exhibit 1, which confirm that Caldwell purchased a "Double Barreled .380

Caliber" handgun, on November 21, 2020.   The description for this item number from the

manufacturer's website describes it as:

> a carefully engineered double barreled .380 caliber people can safely carry in their
> purse or clipped to their side. Ingeniously designed to resemble a smartphone, yet
> with one click of the safety it opens and is ready to fire. The product was designed
> with safety as a priority. A brand everyone can trust, a piece they can rely on, over
> and over.

According to the records recently obtained, on December 23, 2020, Caldwell emailed the store to

follow up on the order, writing, "I am eager to receive this weapon."  On February 13, 2021, while

Defendant Caldwell was still detained in this matter, and one day after the detention hearing at

which Defendant Caldwell's purchase of this weapon was relied upon by the Court in maintaining

his detention, someone used his email address to write to the store, "Since it appears that this order

has not yet shipped (Order #528), I would like to cancel this order and request a full refund."

3.      Defendant Caldwell also contributed a weapon to the QRF.   In his motion,

Defendant Caldwell tries to minimize this contribution by suggesting that a .22 caliber rifle is "a

beginner gun," and quotes an anonymous source who said Defendant Caldwell "brought the .22

rifle as a 'show and tell' curio" (ECF No. 505 at 3). Yet Caldwell felt the need to conceal this

"show and tell" item under a sheet when carrying it through the hotel to Person Three's room.

Defendant Caldwell also contends that this weapon was unloaded. Given the government's

ongoing investigation, we are not prepared to address Defendant Caldwell's contention here. We note, however, that this weapon was stored together with a cache of other weapons and ammunition and, once loaded, would have been capable of firing bullets that could kill or maim people.

4.      Additionally, after January 6, 2021, Defendant Caldwell and/or his spouse utilized an electronic device in their home to conduct searches related to relocating to Costa Rica, Panama, and the Bahamas. While Defendant Caldwell's and his spouse's search histories show they had previously searched retiring abroad, the timing and permanence of this relocation research is concerning. For this reason, while the government agrees that Defendant Caldwell may need Internet access to review discovery and communicate with his counsel, the government believes all other uses of the Internet should be restricted.

WHEREFORE, the United States respectfully submits that an easing of Defendant Caldwell's property confinement is not appropriate and requests that his motion to modify conditions of release be denied in that respect, but granted in part to permit him to utilize the Internet *solely* to review discovery and correspond with his counsel in this case.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    Kathryn L. Rakoczy
       Assistant United States Attorney
       D.C. Bar No. 994559
       Ahmed M. Baset
       Troy A. Edwards, Jr.
       Jeffrey S. Nestler
       Assistant United States Attorneys

3

Louis Manzo
Special Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530


*/s/ Alexandra Hughes*
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue
NW Washington, D.C. 20004