IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| vs. | * | Case No.: 21-CR-28-APM |
| THOMAS E. CALDWELL | * | |

\* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT CALDWELL'S REQUEST FOR RECONSIDERATION REGARDING THE COURT'S RULING ON MOTIONS TO DISMISS COUNTS 1 & 2 (18 U.S.C. § 1512(c))

Defendant, Thomas E. Caldwell, respectfully requests that the Court reconsider its ruling vis-à-vis Defendants' motions to dismiss, specifically as to Counts 1 & 2.  See ECF No. 558.  While he appreciates the Court's thoughtful opinion, Caldwell believes that the Court's holding that "the actions made unlawful by section 1512(c)(2) are not limited to those 'affect[ing] the integrity or availability of evidence in a proceeding,'" is flawed.  ECF No. 558.[1]  The Court indicated that the "Defendants make no effort to challenge" the "straightforward" reading that section 1512(c)(2) is untethered by subsection (c)(1).  Caldwell, respectfully, challenges such a broad reading, which is entirely inconsistent with the plain language of the statute.

**A. The Court's "plain meaning" determination is inconsistent with § 1512(c)'s statutory context.**

---

[1] Caldwell also disagrees with other findings in the Court's opinion, particularly on the issue as to whether an "official proceeding" was intended to include the certification of the Electoral College.  However, Caldwell will train his focus on the issue identified by the Court as the Defendants' "most substantial" challenge.  ECF No. 558 at 25.

1

A substantial flaw in the Court's opinion is that it inadequately accounts for why Congress inserted the word "otherwise" in § 1512(c).  A thorough review of the entire statutory context proves that the word "otherwise" was intended by Congress to marry sections 1512(c)(1) and 1512(c)(2) together.   The most obvious contextual evidence that runs counter to the Court's "plain meaning" determination is § 1512's repeated use of the disjunctive "or" throughout the statute as a way of demarcating plainly separate and independent conduct.   In fact, the word "or" is used <u>nine</u> times in 18 U.S.C. § 1512 to create <u>twenty</u> separate and independent methods of obstructing justice.   For example, "or" is used in § 1512(a)(1) to demarcate three separate methods of obstructing justice by murder or attempted murder.[2]   Similarly, "or" twice appears in § 1512(a)(2), effectively demarcating seven distinct methods of obstruction through threats or physical force.[3]   In

---

[2]  **(a)(1)** Whoever kills or attempts to kill another person, with intent to—
   **(A)** prevent the attendance or testimony of any person in an official proceeding;
   **(B)** prevent the production of a record, document, or other object, in an official proceeding; **or**
   **(C)** prevent the communication by any person to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings; shall be punished as provided in paragraph (3).
18 U.S.C. § 1512(a)(1)(A)-(C) (emphasis added).

[3]  **(2)** Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—
   **(A)** influence, delay, or prevent the testimony of any person in an official proceeding;
   **(B)** cause or induce any person to—
   **(i)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;

stark contrast, Congress, unlike in twenty surrounding places, inserted "otherwise" between subsections (c)(1) and (c)(2) of § 1512(c):

> **(c)** Whoever corruptly—
> **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> **(2)** *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added).

As the Court can see, when Congress set out to create plainly separate and independent acts of obstruction of justice, it did so twenty times by carefully inserting the word "or" (without the word "otherwise") between sections. Accordingly, the Achilles' heel of the Court's holding is, respectfully: Why would Congress, after using "or" to unambiguously demarcate twenty plainly separate and independent methods of obstructing justice, insert the word "otherwise" between subsections (c)(1) and (c)(2) for

---

> **(ii)** alter, destroy, mutilate, or conceal an object with intent to impair the integrity or availability of the object for use in an official proceeding;
> **(iii)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; **or**
> **(iv)** be absent from an official proceeding to which that person has been summoned by legal process; **or**
> **(C)** hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings;
> shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(a)(2)(A)-(C) (emphasis added).

the exact same purpose? In other words, Congress could have "underscored" that (c)(1) and (c)(2) involve different obstructive conduct by <u>omitting</u> "otherwise" from the statute altogether. Logically, therefore, "otherwise" must have been intended by Congress to have a statutory constructive purpose different than, as the Court found, underscoring disjunction between the subsections.

Respectfully, a "straightforward" reading of the statute is an inacurrate reading of the statute. To accurately read the statute, the Court should consider the language of § 1512(c) <u>sans</u> "otherwise":

> **(1)** [Whoever corruptly] alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> **(2)** [Whoever corruptly] obstructs, influences, or impedes any official proceeding, or attempts to do so[.]

Without "otherwise," (c)(1) and (c)(2) are disjunctive, independent clauses, clearly delineate separate conduct, and make perfect sense on their own. In other words, <u>without</u> using the word "otherwise," (c)(1) and (c)(2) describe plainly separate and independent conduct consistent with the Court's interpretation of the statute. Stated another way, as "or" (without "otherwise") 100% <u>effectively disjoins</u> the clauses, "otherwise" could <u>not</u> have been included in the statute for the purpose of underscoring disjunction. Why would Congress delineate--twenty times--separate types of obstructive conduct by using "or," but then insert the word "otherwise" in § 1512(c) for the same purpose? Contrary to the Court's holding, "otherwise" in § 1512(c)(2) must have been inserted for a reason <u>other than</u> disjunction. *Q.E.D*.

### B. The Court Misapplied the Dictionary Definition of "otherwise."

The Court referenced multiple dictionaries in reaching its conclusion that "otherwise" in (c)(2) refers to "in a different way or manner" or in "another way." ECF No. 558 at 26. The Court observed that "otherwise" acts as an "adverb" within § 1512(c). Id. Accordingly, the Court substituted the words "in a different manner" for "otherwise," finding that "the acts prohibited by (c)(1) are 'different' from those prohibited by (c)(2)." Id. At 27. Respectfully, the Court applied the wrong grammatical analysis to the term "otherwise."

### C. Conjunction Junction, What's Your Function?

The Court's finding that "otherwise" is used as an "adverb" in § 1512(c) is technically correct but unmistakably flawed. There are six types of adverbs in the English language: adverbs of time, manner, place, degree, frequency, and conjunction.[4] The first five types are similar in nature, and are used to modify (typically) verbs within their clauses or sentences.[5] The sixth type of adverb is the "conjunctive adverb," which "is an adverb that acts like a conjunction."[6] In § 1512(c), "otherwise" operates as a conjunctive adverb, which, as will be explained infra, should cause the Court to reconsider its ruling.

---

4 https://www.thesaurus.com/e/grammar/types-of-adverbs/ (online thesaurus).
5 Id.
6 Id. A "conjunctive adverb" is sometimes called an "adverbial conjunction."

That "otherwise" in § 1512(c)(2) is a conjunctive adverb is clear.  According to a well-respected dictionary:

> When used to connect two related clauses, *otherwise* is usually classified as a conjunctive adverb, which by grammatical tradition should be preceded either by a semicolon or by a period.[7]

Notably, "otherwise" appears after a semicolon, a blaring grammatical siren that it's indeed a conjunctive adverb.[8]  Additionally, "otherwise" is interspersed between two independent clauses, another classic tip-off that it is functioning as a conjunctive adverb.[9]  Additionally, as the Court noted, "otherwise" is an adverb that "*connects* the two provisions[.]"  ECF No. 558 at 27, fn. 6 (emphasis added).  Just as compelling, "otherwise," which the Court and Caldwell both agree is used as an adverb, does not modify any words that appear after it in subsection (c)(2).  An adverb's grammatical

---

[7] AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2020), https://www.ahdictionary.com/word/search.html?q=otherwise, (Usage note) (emphasis original).

[8] William & Mary Writing Resource Center, wm.edu/as/wrc/newresources/handouts/the-semicolon.pdf (listing "otherwise" as a common conjunctive adverb placed after a semicolon).

[9] Id.  See also Jennifer Gunner, M.Ed. (Education), https://grammar.yourdictionary.com/parts-of-speech/adverbs/con-adverb.html ("Conjunctive adverbs can follow a semicolon or a period and typically have a comma after them.").  While the modern MLA style of writing suggests that a comma should be placed after a conjunctive adverb, this grammatical preference does not necessarily apply to "otherwise," which is one of the few conjunctive adverbs that doesn't end with –ly.  See, e.g. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th Ed. 2021), https://www.ahdictionary.com/word/search.html?q=otherwise (usage note regarding "otherwise") ("When introducing a new clause, **otherwise** is *often* followed by a comma.") (emphasis added).

duty is to act as a "modifier," i.e., "add information to another element in the sentence."[10] "Otherwise" does not add information about the words "obstructs, influences, or impedes," which logically means that, by process of elimination, "otherwise" in (c)(2) acts as a conjunctive adverb.

### D. A "conjunctive adverb" conjoins and modifies two separate clauses.

Respectfully, Caldwell is not being grammatically nit-picky. Analyzing (correctly) the word "otherwise" as a conjunctive adverb substantially changes the calculus of interpreting § 1512(c). The difference between "otherwise" the "adverb" and "otherwise" the "conjunctive adverb" is significant. An "adverb" modifies an adjacent word, e.g., "she believed *otherwise*," "*quickly* ran," "knocked on the door *loudly*," "*briefly* spoke," "went to the basement *quietly*," etc. Conjunctive adverbs, by contrast, do not modify adjacent words; instead, these grammatical renegades relate the entire adverbial clause back to the preceding clause, thus modifying, in some respect, the first clause:

> Most of the time, adverbs are words that we use to modify verbs, adjectives, or other adverbs. … A conjunctive adverb *acts differently* than other adverbs by connecting independent clauses that can stand alone as sentences. In this way *it is still acting as a modifier by using one clause to modify another*.[11]

---

10 University of Ottawa Writing Center, https://arts.uottawa.ca/writingcentre/en/hypergrammar/modifiers

11 Dictionary.com (online dictionary and thesaurus), https://www.thesaurus.com/e/grammar/conjunctive-adverbs/ (emphasis added). See also Renee Banzhaf, M.Ed. in English Education, https://grammar.yourdictionary.com/parts-

A "conjunctive adverb" is "a word that modifies a whole previous statement." Frederick Crews, *The Random House Handbook* 403 (6th ed. 1992). A "conjunctive adverb . . . brings together two complete thoughts like a conjunction[] [and] use[s] the second clause to modify the first clause like an adverb."[12] In other words, contrary to the Court's holding, "otherwise" was not intended to signify disjunction, i.e., "to underscore that the acts prohibited by (c)(1) are 'different' from those prohibited by (c)(2)." ECF. No 558 at 27, fn. 6. *Au contraire*, the use of "otherwise" as a conjunctive[13] adverb is proof positive that Congress intended to inextricably tie these clauses together with the adverbial clause ("obstructs, influences, or impedes") modifying the opening clause.

Accordingly, analyzed through the conjunctive adverb lens, "otherwise" was obviously intended to marry (c)(2) to (c)(1) for the purpose of modifying the language in (c)(1). First, as posited supra: Why would Congress insert "otherwise" in (c)(2) when "or" would accomplish the goal of disjoining it from (c)(1)? Accordingly, the Court's conclusion that "otherwise" serves to "connect the two provisions but *underscores* that the acts prohibited by (c)(1) are 'different' from those prohibited under (c)(2)," ecf. no.

---

of-speech/adverbs/list-of-conjunctive-adverbs.html ("Conjunctive adverbs function as both conjunctions (by joining ideas) and as adverbs (by modifying parts of the sentence)."); Andrew Smith, Global Business Language Consultant, *We Speak Business*, https://www.we-speak-business.com/blog/conjunctive-adverbs ("The role of the conjunctive adverb is to turn the clause that it introduces into an adverbial modifier of the previous clause.").

[12] Jennifer Gunner, M.Ed. (Education), *YourDictionary.com*, https://grammar.yourdictionary.com/parts-of-speech/adverbs/con-adverb.html

[13] In Latin, "conjunction" literally translates to "join together."

558, fn. 6 (emphasis added), respectfully, implicitly suggests that "otherwise" is surplussage.[14] The Court and Caldwell agree on two things: "otherwise" is used as an "adverb," and, accordingly, (c)(1) and (c)(2) are "connected" by that term. A flaw in the Court's reasoning, however, is that when used as an "adverb" to "connect" two clauses, "otherwise" is a <u>conjunctive</u> adverb, which, by definition, means that the "otherwise," or adverbial, clause is <u>not</u> modified itself but, rather, modifies the opening clause. In other words, (c)(2)'s "obstructs, influences, or impedes" <u>modifies</u> language in the first clause, and is manifestly not language independent of (c)(1).

### E. So what did Congress intend?

By adding the conjunctive adverb "otherwise" to § 1512(c), Congress intended three things. First, Congress, in contradistinction to twenty other portions of 18 U.S.C. § 1512, created a clear interrelationship—a "conjunctive relationship" -- between (c)(1) and (c)(2). Second and related, Congress intended the adverbial clause, i.e., "obstructs, influences, or impedes," to modify in some way the language in the opening clause. Third, as "otherwise" is a term of contrast, the adverbial clause, subsection (c)(2), was likely intended by Congress to enlarge the proscribed conduct in (c)(1). With this background in mind, a fair reading of the statute is: "Whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object with the intent to impair the

---

[14] Congress could have "underscored" that (c)(1) and (c)(2) prohibited different conduct by <u>omitting</u> the word "otherwise." The Court's finding on this point is, respectfully, flawed.

9

object's integrity or availability for use in an official proceeding, or who engages in similar, but unenumerated, obstructive conduct involving the integrity and production of documentary evidence for an official proceeding," is guilty under § 1512(c).

Such a reading of § 1512(c) takes into account that the term "otherwise" does two things: it creates a connection between (c)(1) and (c)(2), while it expands the reach of the verbs of proscription in subsection (c)(1). Congress's intent was to proscribe obstructive conduct regarding the integrity and production of documents and objects that might otherwise slip through the cracks without a broad residual clause. Some examples include:

1) A person feigns a COVID infection and quarantines himself to avoid producing documents under a time-sensitive subpoena by a grand jury.

2) A corporate executive, knowing that he could be indicted for fraud, hands over to the Government, in response to a subpoena, three tractor-trailers full of non-germane documents, knowing that the smoking-gun document is buried at the bottom, ensuring that prosecutors miss the statute of limitations.

3) A person under grand jury investigation with the IRS, knowing that a windstorm is about to hit his residence, sets all of his incriminating paperwork on a front porch table, where they proceed to be blown away, making them unavailable for an official proceeding.

4) A lawyer files multiple frivolous challenges to a court order or subpoena to avoid document production, admitting that she filed the litigation for no other reason but to delay handing over documents for use in an official proceeding.

5) A person, knowing that their iPhone contains incriminating texts messages, deletes selected, non-incriminating texts, which changes the context of other texts messages, deliberately making them look less incriminating to the grand jury.

6) Knowing that a plaintiff, because of a mandatory deadline, has one hour left to hand-file a make-or-break pleading at the courthouse, a person slashes the plaintiff's tires, preventing him from making the filing, which causes the plaintiff's case to be dismissed.

7) A corporate fraud suspect changes the company password to computer files, which have been subpoenaed, preventing access by investigators and others.

In the above scenarios, the wrong-doers did not "alter[], destroy[], mutilate[], or conceal[]" a record as enumerated in subsection (c)(1), but their conduct could still be prosecuted under § 1512(c). Congress's intent was to criminalize obstructive conduct technically not captured or anticipated under (c)(1), not to hand prosecutors a sweeping, over-lapping obstruction of justice statute equipped with a 20-year maximum penalty sledgehammer.

    As the Supreme Court has emphasized "over and over," when "expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." U.S. Nat'l Bank v.

Independent Ins. Agents of Amer., 508 U.S. 439, 455 (1993) (internal citations omitted). The current version of § 1512(c) was enacted as part of Sarbanes-Oxley and was intended by Congress to improve the accuracy of corporate disclosures by penalizing those who obstruct justice "by impairing the integrity or availability of records, documents, and other tangible objects." United States v. Hutcherson, No. 6:05CR00039, 2006 U.S. Dist. LEXIS 6652, at *6-7 (W.D. Va. Feb. 3, 2006). Accordingly, "the amended § 1512(c) created a specific subsection dealing with tampering with tangible evidence, in what was otherwise a statute that previously dealt only with tampering of persons." Id. Section 1512 was not intended to create two separate crimes, but instead, was "meant to criminalize difficult to enumerate conduct that would otherwise slip past Section 1512(c)(1)'s specific proscription. Id. Accord United States v. Pugh, No. 15-CR-116 (NGG), 2015 U.S. Dist. LEXIS 170271, at *54-55 (E.D.N.Y. Dec. 21, 2015) ("Accordingly, this structure suggests that subsections (1) and (2) of Section 1512(c) outlining two separate ways that a person can corruptly violate the statute.").

### F. Conclusion

Respectfully, the Court should reconsider its ruling as to Caldwell's motion to dismiss as to Counts 1 & 2 of the sixth superseding indictment. Why would Congress add "otherwise"—or, for that matter, any other word—to disjoin (c)(1) and (c)(2), when the statutory language, sans "otherwise," would have accomplished the same objective? Additionally, "otherwise," which appears immediately after a semicolon and separates two otherwise independent clauses, is used in § 1512(c) as a conjunctive adverb. As

such, the adverbial clause ("obstructs, influences, or impedes") modifies the verbs ("alters, destroys, mutilates, or conceals") in the opening clause. The purpose of "otherwise" was both "conjunctive" and "adverbial," i.e., to show a relationship (conjoined) between the clauses, and to expand the reach of the enumerated verbs in (c)(1) to similar, but unenumerated actions vis-à-vis the production of tangible evidence. As Caldwell's alleged criminal actions on J6 have no connection to tangible evidence, his Motion to Dismiss should be granted.

                                                                                 /s/
                                     David W. Fischer, Esq.
                                     Federal Bar No. 023787
                                     Law Offices of Fischer & Putzi, P.A.
                                     Empire Towers, Suite 300
                                     7310 Ritchie Highway
                                     Glen Burnie, MD 21061
                                     (410) 787-0826
                                     Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of December, 2021, a copy of the foregoing Defendant Caldwell's Notice of New Authority was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:	Office of the United States Attorney
	555 4th Street, NW
	Washington, DC 20001

                              /s/
	David W. Fischer, Esq.